**Roger Morgan WALL, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1631–04.**

Court of Criminal Appeals of Texas.

Jan. 18, 2006.

Rehearing Denied March 8, 2006.

732

Angela Cameron, Mary Acosta, Houston, for Appellant.

Alan Curry, Asst. District Attorney, Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the unanimous Court.

A jury convicted appellant of aggravated assault and, finding that he had two prior felony convictions, assessed his punishment at 35 years' imprisonment. On appeal, appellant argued that the trial court violated his right to confrontation when it allowed a police officer to testify about one of the assault victim's out-of court statements made during a hospital interview. The court of appeals agreed that admitting the statements under the excited-utterance exception to the hearsay rule violated the Sixth Amendment under the recently announced *Crawford* standard.[1] The court of appeals found, however, that the error was harmless because the properly admitted evidence included testimony from three different eyewitnesses that appellant, without provocation, struck several people, including the complainant, with a board. We granted review to determine whether appellant's confrontation rights were in fact violated, and if so, whether that violation was harmful.[2] We agree with the court of appeals that appellant's confrontation rights were violated, and that the violation was harmless during the guilt stage. Therefore, we affirm appellant's conviction. Because the court of appeals did not address whether the *Crawford* violation was harmful at the punishment

---

1. *Wall v. State*, 143 S.W.3d 846 (Tex.App.-Corpus Christi 2004).

2. We granted the State's PDR which asked whether the court of appeals "erred by holding that the victim's statement, which was admitted pursuant to the excited utterance exception to the hearsay rule, violated appel-lant's federal and state rights to confrontation." We granted appellant's PDR which asked whether the court of appeals erred "in holding the admission of evidence in violation of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) was harmless."

stage, we remand this case to that court for further proceedings.

## I.

On December 31, 2001, a group of homeless men gathered to drink and talk at an abandoned Shell station off the feeder road of I–10 in Channelview, Texas. Appellant, who lived in a nearby apartment and who knew some of the men, joined the group. At some point during the afternoon, appellant picked up a board and beat several of the men. Two of those men, Samuel Pierce and Donald Norman, were severely injured and taken by ambulance to a nearby hospital. While in the emergency room, both were questioned by Deputy Luis Figueroa and photographed by Deputy Kirk Willis.

Appellant was charged with the aggravated assault of Samuel Pierce. At trial, Mr. Pierce testified that on New Year's Eve afternoon he was at the Shell station drinking with some people, including appellant, whom he knew only as "Roger." Then "[a] bottle got broke against the wall and things started being said." Mr. Pierce said that appellant was behind him, and the next thing he knew he was hit in the head a couple of times with a two-by-four board. When he put up his arm in self defense, appellant hit his arm. Mr. Pierce's injuries included a cut on his head that required stitches, a fractured nose, and a broken arm that required "a lot of surgeries to put it back together." Mr. Pierce said that, as far as he knew, nobody had said or done anything to appellant to provoke the beating.

Donald Norman did not testify. Instead, the State called Deputy Figueroa to relate what Mr. Norman told him in response to the deputy's questioning at the hospital. Appellant objected to this evidence, claiming that it was inadmissible hearsay and its admission violated his right to confrontation. The trial court admitted Mr. Norman's out-of-court statements under the excited-utterance exception to the hearsay rule.[3]

Deputy Figueroa recounted his interview of Mr. Norman:

Q: When you said that Mr. Norman also talked about the defendant, did he give you a name or description of the individual that assaulted him?

A: Yes, ma'am, he did.

Q: What name was he able to give you?

A: He said he knew him as Roger and did not know his last name. Just, I know him as Roger. And he stated he was approximately 6 feet in height, bald.

\* \* \*

Q: Was Mr. Norman able to give you a description of the man he knew as Roger?

A: Yes, he was.

Q: What was that description?

A: White male, 6 feet in height, bald, with tattoos all over him.

Q: Okay. Was Mr. Norman able to tell you the events or how the assault took place?

A: Yes, he was.

Q: What did he tell you?

A: He told me they were drinking and—Mr. Pierce, Mr. Thomas and the defendant were drinking at the old gas station when the defendant said, "I hate niggers, I hate Mexicans."

---

3. *See* Tex.R. Evid. 803(2), which reads, "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule, regardless of whether the declarant testifies as a witness.

Q: What did—what happened after that?

A: Mr. Norman told me that he told the defendant, "I like all races."

&ast; &ast; &ast;

Q: Go ahead.

A: Mr. Norman stated he told the defendant, "I like all races and I served this country for all races."

Mr. Norman then told me that the defendant got angry and said, "You're a nigger lover," at which time he walked over to the bed of a truck and retrieved a club and came back to him and started to assault him, began assaulting him with a club.

Q: Was there anything else that Mr. Norman told you about the assault?

A: He mentioned that the incident happened very fast and he didn't know what to do and just went on and gave the descriptors and said he only knew him as Roger.

The jury also heard testimony from two bystander eyewitnesses, Cinellia Fry (who saw the assault while stopped at a nearby red light), and Jerry Hunter (who watched the assault from a McDonald's across the street), as well as other responding deputies, none of whom testified about the racially charged conversation.

## II.

Appellant's claim on appeal was that the admission of Mr. Norman's out-of-court "testimonial" statement violated his right to confrontation under *Crawford v. Washington*,[4] which the Supreme Court delivered during the pendency of this appeal.

In *Crawford*, the defendant was charged with assault; he claimed self-defense. The police interrogated both Crawford and his wife, Sylvia. Sylvia's tape-recorded statement, though generally consistent with Crawford's own statements, undermined his claim of self-defense. Sylvia did not testify at trial because her husband invoked the state marital privilege. The prosecutor then offered her tape-recorded statement to police as a statement against her penal interest. Crawford objected on Confrontation Clause grounds, but the trial court found the statement trustworthy and admissible under *Ohio v. Roberts*.[5]

After examining the historical origins of the clause, the Supreme Court repudiated its *Roberts* framework of "open-ended balancing tests" in favor of a "categorical" rule that requires "unavailability and a prior opportunity for cross-examination" with regard to "core testimonial statements that the Confrontation Clause plainly meant to exclude."[6] The Court declined to "spell out a comprehensive definition of 'testimonial,'" but it did not leave lower courts entirely without guidance, as it stated that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."[7]

The Supreme Court held that the admission of a hearsay statement made by a non-testifying declarant violates the Sixth Amendment if the statement was testimonial, and the defendant lacked a prior opportunity for cross-examination.[8] Thus, a "testimonial" statement is inadmissible absent a showing that the declarant is pres-

---

**4.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**5.** 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

**6.** 541 U.S. at 63, 67–68, 124 S.Ct. 1354.

**7.** *Id.* at 50, 68.

**8.** *Id.* at 68.

ently unavailable and the defendant had a prior opportunity for cross-examination, even if the statement "falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.' " [9] The Court stressed that if "testimonial" evidence is at issue, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." [10]

■ The Court identified three kinds of statements that could be regarded as testimonial:

(1) "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially";

2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and

3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." [11]

---

9. *Id.* at 59–60, 68 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531).

10. *Id.* at 68.

11. *Id.* at 51–52 (cites omitted). Since the *Crawford* decision, most lower courts have looked to this third (and broadest) formulation of "testimonial" to ensure compliance with the Confrontation Clause. The Sixth Circuit, quoting one of the six professors who had filed an amicus brief in *Crawford*, explained:

> [This] broader definition "is necessary to ensure that the adjudicative system does not effectively invite witnesses to testify in informal ways that avoid confrontation." The *Crawford* Court found the absence of an oath not to be determinative in considering whether a statement is testimonial.... [T]he danger to a defendant might well be greater if the statement introduced at trial, without a right of confrontation, is a statement volunteered to police rather than a statement elicited through formalized police interrogation. One can imagine the temptation that someone who bears a grudge might have to volunteer to police, truthfully or not, information of the commission of a crime, especially when that person is assured he will not be subject to confrontation.... If the judicial system only requires cross-examination when someone has formally served as a witness against a defendant, then witnesses and those who deal with them will have every incentive to ensure that testimony is given informally.

*United States v. Cromer*, 389 F.3d 662, 674–75 (6th Cir.2004) (internal citations omitted). Thus, "where an objective witness reasonably anticipates that a given statement will be used at a later trial, that statement is likely testimony in the sense that it is offered to establish or prove a fact.... As such, absent unavailability and a prior opportunity for cross-examination, it must be subjected to the strictures of the Confrontation Clause." *United States v. Hinton*, 423 F.3d 355, 360 (3rd Cir.2005). The Second Circuit noted that "the [*Crawford*] Court would use the reasonable expectation of the declarant as the anchor of a more concrete definition of testimony." *United States v. Saget*, 377 F.3d 223, 229 (2d Cir.2004). And the Tenth Circuit stated, "We conclude that the 'common nucleus' present in the formulations which the Court considered centers on the reasonable expectations of the declarant. It is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance ... from the true testimonial statement." *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir.2005). In an early post-*Crawford* decision, *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir.2004), *cert denied*, 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005), the First Circuit employed the third, broadest formulation when it held that an accomplice's private conversation with an associate was non-testimonial, in part because it was not made "under circumstances in which an objective person would 'reasonably believe that the statement would be available for use at a later trial.' "

The Supreme Court noted that some statements qualify as testimonial under any definition—for example, *"ex parte* testimony at a preliminary hearing" and "[s]tatements taken by police officers in the course of interrogations."[12] The Court continued: "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class."[13] In a footnote, the Court added:

> We use the term "interrogation" in its colloquial, rather than any technical legal, sense.... Just as various definitions of "testimonial" exist, one can imagine various definitions of "interrogation," and we need not select among them in this case. Sylvia's recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition.[14]

The Court went on to hold that admission of Sylvia's testimonial statement against Crawford, was "sufficient to make out a violation of the Sixth Amendment" because he had no opportunity to cross-examine her.[15]

The Austin Court of Appeals faced facts and a claim almost identical to the ones in this case in its post-*Crawford* decision, *Cassidy v. State.*[16] In *Cassidy,* a police officer was dispatched to a convenience store where he found emergency medical personnel treating a clerk for a stab wound to his abdomen and cuts on his hand. The officer testified about the bloody crime scene and stated that two witnesses told him what they had seen and gave him the suspect's description and license plate number.[17] The officer radioed a request for other officers to be on the lookout for the suspect's truck.[18] The clerk was taken to a hospital where, one hour after the assault, he was interviewed by the officer who testified that the clerk gave him a description of his assailant that matched that provided by the two witnesses. The clerk also said "that the man had entered the store and asked to cash a check. When [the clerk] refused to cash the check, the man stabbed him."[19] The court of appeals, without elaboration, held that the officer's hospital interview was not an interrogation under *Crawford,* and, therefore, the clerk's statement was not testimonial.[20]

In evaluating appellant's claim in the present case, the court of appeals noted the holding in *Cassidy,* but ruled the other way.[21] The court of appeals explained that, although the Supreme Court declined to define "testimonial" in *Crawford,* it did set out categories of statements that definitely qualified as testimonial statements, including those taken during "police interrogation."[22] Noting that the *Crawford* Court specifically stated that a recorded statement knowingly given in response to structured police questioning qualifies under any conceivable definition, the court of appeals concluded "that a police officer

---

12. *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354.

13. *Id.* at 53, 124 S.Ct. 1354.

14. *Id.* n. 4, 124 S.Ct. 1354.

15. *Id.* at 68, 124 S.Ct. 1354.

16. 149 S.W.3d 712 (Tex.App.Austin 2004, pet. ref'd), *cert. denied,* 544 U.S. 925, 125 S.Ct. 1648, 161 L.Ed.2d 486 (2005).

17. *Id.* at 713–14.

18. *Id.* at 714.

19. *Id.*

20. *Id.* at 716.

21. *Wall v. State,* 143 S.W.3d at 851.

22. *Id.*

conducting an interview of a witness at a hospital is such 'structured police questioning,' " and is thus an "interrogation" under *Crawford.*[23]

Turning to the facts of this case, the court of appeals noted that Mr. Norman's statement was given in response to investigative questioning by Deputy Figueroa and therefore was testimonial "as a matter of law."[24] Because Mr. Norman did not testify at trial and appellant had had no prior opportunity for cross-examination, the court of appeals concluded that the admission of these out-of-court statements

violated appellant's right to confrontation.[25] However, that court also concluded that this constitutional error was harmless beyond a reasonable doubt.[26]

## III.

In the wake of *Crawford,* courts across the nation have grappled with the meaning of "testimonial" hearsay.[27] *Cassidy* and *Wall* are but two of the many cases that have reached conflicting results about whether hospital statements made to police officers are testimonial.[28] In *Tyler v.*

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.* at 852–53.

27. We note that the Supreme Court recently granted certiorari in two post-*Crawford* cases, *Hammon v. State,* 829 N.E.2d 444 (Ind.2005), *cert. granted,* —— U.S. ——, 126 S.Ct. 552, 163 L.Ed.2d 459 (U.S., 2005), and *State v. Davis,* 154 Wash.2d 291, 111 P.3d 844 (2005), *cert. granted,* —— U.S. ——, 126 S.Ct. 547, 163 L.Ed.2d 458 (U.S., 2005), presumably to refine its definition of "testimonial" and to provide greater guidance to the bench and bar concerning the scope of *Crawford'* s reach.

28. See, for example, the following cases—all addressing whether statements made during hospital police interviews are testimonial:

* *People v. Cage,* 15 Cal.Rptr.3d 846, 856–57 (Ct.App.2004), *review granted,* 19 Cal. Rptr.3d 824, 99 P.3d 2 (Cal.2004) (not testimonial; "We cannot believe that the framers would have seen a 'striking resemblance' between [deputy's interview of victim] at the hospital and a justice of the peace's pretrial examination. There was no particular formality to the proceedings. [The deputy] was still trying to determine whether a crime had been committed and, if so, by whom. No suspect was under arrest; no trial was contemplated. [The deputy] did not summon [victim] to a courtroom or a station house; he sought him out, at a neutral, public place. There was no 'structured questioning,' just an open-ended invitation for [victim] to tell his

story. The interview was not recorded. There is no evidence that [the deputy] even so much as recorded it later in a police report. Police questioning is not necessarily police interrogation. When people refer to a 'police interrogation,' however colloquially, they have in mind something far more formal and focused.");

* *People v. King,* 121 P.3d 234, 240 (Colo.Ct. App.2005, writ denied) (not testimonial; noting that officer "arrived upon the scene to find the victim bleeding from her neck. She applied pressure to the wound, and it was necessary for her to ride in the ambulance with the victim to continue to apply pressure to stop the bleeding. Although [the officer] remained at the hospital with the victim for about two hours, P.T. was still distressed by the assault and was in a substantial amount of pain from her injuries. P.T.'s statements were not made in a formal setting such as a police station. Nor were the statements elicited by [the officer] in a deliberate manner to obtain incriminating evidence against defendant.... The seriousness of P.T.'s injuries supports the nontestimonial nature of the statement because under such pain and distress, it is highly unlikely that P.T. or any reasonable person would make any statement with the expectation that it would subsequently be used prosecutorially");

* *People v. West,* 355 Ill.App.3d 28, 291 Ill. Dec. 72, 823 N.E.2d 82, 88 (2005, appeal pending) (testimonial; noting that "at the time M.M. was questioned at the hospital, the defendant was already in custody and the officers possessed some knowledge of his alleged involvement in the assault.

*State*,[29] the Fourteenth Court of Appeals, also faced with the question of whether a statement made to an officer at a hospital was testimonial, declined to "take sides" in the disagreement between *Wall* and *Cassidy* because the circumstances in its case were "fundamentally different from those encountered in either of these prior opinions." [30]

In *Tyler*, the evidence showed that Vlryn Veal was leaving a bar when he was shot in the abdomen by a man who initially approached him asking for a light.[31] Officer Kirk Milton testified that he was dis-

Their questioning of M.M. was conducted for the purpose of further investigating the defendant's involvement and to gather evidence for use in a criminal prosecution. Accordingly, the officers asked specific, purposeful questions and were in turn provided with detailed descriptions of the events that transpired and the defendant's involvement. These investigative, evidence-producing actions bore statements which, if used to convict the defendant, would implicate the central concerns underlying the confrontation clause.");

\* *State v. Nix*, 2004 Ohio 5502, P77 (Ohio Ct.App.2004) (not testimonial; stating that when officers questioned assault victim at hospital, he was not a suspect and not "under any form of custody that would have led to *Miranda* warnings and the type of 'structured questioning' sufficient to be called a police 'interrogation,' " but noting "that some courts have taken a very broad view of *Crawford*, observing that the Supreme Court's rationale suggests that the determinative factor of 'whether a declarant bears testimony' is the declarant's expectation that his or her statements may later be used at a trial.' ... If this were the test, then [victim's statements to officer] during both in-hospital interviews would be testimonial under *Crawford*, as certainly [victim] must have known that his statements may have been used in any subsequent trial of the man who had shot him. The problem with such a broad definition, as we see it, is that it would render 'testimonial' anything said to a police officer involved in investigating a crime");

\* *People v. Qiang Wang*, 2004 WL 2955856, at *3, 2004 Cal.App. Unpub. LEXIS 11664, *9–10 (Cal App.2004) (testimonial; officers, wearing their uniforms and carrying their weapons, came into the emergency room to question victim about domestic violence she had reported, gave her a form explaining option of keeping her identity confidential, and interviewed her for 25 to 30 minutes, during which they obtained information about her relationship with defendant and his prior abuse; concluding that victim's statement was "testimonial" under *Crawford* "having been obtained by officers operating in their investigative capacity for the purpose of producing evidence in anticipation of a potential criminal prosecution");

\* *People v. Herring*, 2005 WL 958220, at *14, 2005 Cal.App. Unpub. LEXIS 3748, *40 (Cal.App.2005) (testimonial; victim's statement to police officer at hospital made after "she had been removed from the crime scene, and the police had secured the area and had an opportunity to assess and resolve any other exigent matters"; officer "was aware of the nature of the alleged crimes and the identity of the likely assailant [which enabled him] to conduct more purposeful and focused questioning [and to ask] about incidents of prior abuse by the same assailant"; concluding that officer "was acting in an investigatory capacity to produce evidence in anticipation of a potential criminal prosecution");

● *People v. Lennon*, 2005 WL 957751, at *13, 2005 Cal.App. Unpub. LEXIS 3750, *38–39 (Cal.App.2005) (not testimonial; assault victim was "not an accuser who made a 'formal statement to government officers.' ... The statements were not even made in anticipation of trial, so as to fit into the broadest category of testimonial statements suggested by *Crawford*, i.e.: 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' ... The statements were made in a hospital a little over a half hour after the stabbing, in a situation where [victim's] only concern was the life of her grandson").

29. 167 S.W.3d 550 (Tex.App.-Houston [14th Dist.] 2005, pet. filed).

30. *Id.* at 554.

31. *Id.* at 552.

patched to the crime scene, which he quickly secured and handed over to other officers before following Veal's ambulance to the hospital. There, he found Veal being prepared for surgery. Officer Milton was in uniform; Veal was still lying on the ambulance gurney, bloody, and apparently in great pain. Officer Milton said he "asked Veal if he was 'Mr. Veal,' and without further prompting, Veal told Milton what had happened to him that night." According to Veal, the assailant pulled a gun on him and asked for his wallet, that he refused, telling the assailant he would still give him a light; and that when he turned around with the lighter, the assailant shot him in the stomach.[32] "Milton specifically stated that he just listened to Veal and did not ask questions. He said that he wanted to get some initial information regarding the events that had transpired."[33] The trial court ruled that Veal's statements were not testimonial and were admissible. The Fourteenth Court of Appeals agreed:

> Here, it is undisputed that there was no investigative questioning of Veal at the time he gave his statement. Officer Mil-

ton asked Veal if he was 'Mr. Veal'; Milton specifically testified that he asked no further questions and that Veal simply told him what happened. Thus, Veal clearly did not give his statement in response to police interrogation. The statements were not being recorded in any manner and were given in a particularly informal setting, while Veal was being prepared for surgery by hospital staff. It appears that Veal simply wanted to let the officer know what happened to aid the start of the investigation. Based on these circumstances, we hold that Veal's statement was not testimonial in nature.[34]

This trio of Texas cases, *Cassidy*, *Wall*, and *Tyler*, illustrate what the First Circuit meant, in *United States v. Brito*, when it recently said that "[t]he case law in this nascent field is muddled as to whether excited utterances may or may not be classified as testimonial hearsay."[35] The *Brito* court noted that the decisions fall into three camps, with some courts taking the view that excited utterances never constitute testimonial hearsay,[36] some courts

32. *Id.*

33. *Id.*

34. *Id.* at 554 (citations omitted).

35. *United States v. Brito*, 427 F.3d 53, 60 (1st Cir.2005).

36. *Brito*, 427 F.3d at 60. In *Key v. State*, 173 S.W.3d 72 (Tex.App.-Tyler 2005, pet. ref'd), the Tyler Court of Appeals concluded as much and held that the underlying rationale of an excited utterance supports a determination that such statements are not testimonial in nature. "It is consistent with the definition of an excited utterance to conclude that it is not a statement that has been made in contemplation of its use in a future trial." *Id* at 76. The State urges us to conclude, as did the Tyler court, that all excited utterances are nontestimonial as a matter of law. Although

this position has support in some cases from other jurisdictions, it is a minority position, and the proportion of cases that espouse this view is shrinking by the day. One of the cases *Key* and the State here rely on, *Hammon v. State*, 809 N.E.2d 945, 952 (Ind.Ct. App.2004), in which the Indiana Court of Appeals stated "that the very concept of an 'excited utterance' is such that it is difficult to perceive how such a statement could ever be 'testimonial,'" was superceded in part on further review. *Hammon v. State*, 829 N.E.2d 444 (Ind.2005). The Indiana Supreme Court distanced itself from the court of appeals's bright line:

> [W]e agree with the Court of Appeals in its view that responses to initial inquiries at a crime scene are typically not "testimonial." We do not agree, however, that a statement that qualifies as an "excited utterance" is necessarily nontestimonial. The Court of Appeals is likely correct that the declarant

concluding that the excited nature of the utterance has no or little bearing on whether a particular statement is testimonial,[37] and some courts recognizing "that the excited utterance inquiry and the testi-

monial hearsay inquiry are distinct but symbiotic; the startling event that gives rise to an excited utterance informs the Confrontation Clause analysis and often dissipates the very qualities of a statement

of an excited utterance will ordinarily lack the requisite motive because the heat of the moment makes it unlikely that the declarant is focusing on preservation rather than communication of information. But an interrogating officer may be so motivated. Thus, the "structured questioning" identified by some courts as an indicium of a testimonial statement may be best understood as evidence of a purpose to elicit testimonial statements.

*Id.* at 453. As noted above, the Supreme Court recently granted certiorari in *Hammon.* *See* note 27 *supra.*

**37.** *Brito,* 427 F.3d at 60. Some courts look, for example, to the police officer's state of mind. In *State v. Lewis,* 360 N.C. 1, 619 S.E.2d 830 (2005), the North Carolina Supreme Court held that a police officer's role in gathering information is a key factor to be considered by a court in determining whether the declarant's statements are testimonial:

structured police questioning is a key consideration in determining whether a statement is or is not testimonial. Structured police questioning or interrogation does not occur exclusively in a police station.... The questioning might also occur in a field location, detention facility, or the North Carolina Department of Correction. This questioning is in contrast to the initial gathering of information and determination of whether a crime was actually committed. Whether structured police questioning is present may also depend on the status of the investigation, as evidenced by the role of the officer(s) asking questions of the declarant. This distinction is an important one, because the statements made as a result of a patrol officer's preliminary questioning will likely be nontestimonial, while statements resulting from investigators' questions, which are made at a later point in time, will likely be testimonial. The point at which questioning becomes "structured police questioning" is analogous to the line crossed when police involvement changes from mere presence to effecting a seizure of

a person, or when police questioning takes a form requiring *Miranda* rights to be read. So too a line is crossed when police questioning shifts from mere preliminary fact-gathering to eliciting statements for use at a subsequent trial. When this line is crossed, any statements elicited are testimonial in nature.

619 S.E.2d at 842 (citations omitted). The court cautioned however, that the police officer's role was not determinative in deciding if a statement is testimonial, rather the "determinative factor is the particular status or stage of the investigation; when the investigation goes beyond preliminary fact-gathering, the investigation will tend to become structured police questioning and will likely produce testimonial statements. The role of the officer is merely a factor to be considered in determining the stage of the investigation." *Id. See also Hammon,* 829 N.E.2d at 455 (*citing United States v. Mikos,* 2004 U.S. Dist. LEXIS 13650, * 17–18 (N.D.Ill. July 16, 2004)) ("Department of Health and Human Services agents interviewed a victim of a doctor under investigation. 'HHS Agents interviewed Brannon as part of a formal healthcare fraud investigation. Their purpose was to gather information for potential use against Mikos at trial, thus, the Court finds that Brannon's statements to the HHS Agents fall within the realm of testimonial statements.' "), *United States v. Saner,* 313 F.Supp.2d 896, 901–02 (S.D.Ind.2004) ("a target's *ex parte* statements to a prosecutor who visited the target's home were testimonial because the prosecutor was procuring these statements 'with an eye toward trial' "), and *People v. Kilday,* 123 Cal.App.4th 406, 422, 20 Cal. Rptr.3d 161, 174 (2004), *review granted,* 23 Cal.Rptr.3d 693, 105 P.3d 114 (Cal.2005) ("The determination whether a statement obtained through police questioning in the field is testimonial requires a case-specific, fact-based inquiry. Under *Crawford,* this inquiry must center around whether the officer involved was acting in an investigative capacity to produce evidence in anticipation of a potential criminal prosecution.").

that otherwise might render the statement testimonial."[38]

*Cassidy* and *Wall* seem to fall, at least by implication, into the first and second camps respectively.[39] *Tyler* falls in the third camp, as do most Texas cases,[40] as well as those from other jurisdictions.

**38.** *Brito*, 427 F.3d at 60–61.

**39.** *See* Major Robert W. Best, *To Be or Not to Be Testimonial? That is the Question*, 2005 ARMY LAW. 65, 84–86 (April 2005), noting that in *Cassidy v. State*, "the characterization of the statement as an excited utterance (a characterization not disputed by Cassidy) seemed to carry the day" while in *Wall v. State*, a case "virtually identical to *Cassidy* .... [t]he trial court's conclusion that the statement was an excited utterance, did not figure into the court's analysis."

**40.** In *Davis v. State*, 169 S.W.3d 660 (Tex. App.-Austin 2005, no pet. h.), the court of appeals surveyed the Texas decisions, acknowledged that a number of other courts had suggested that excited utterances could not be testimonial because their distinguishing character as spontaneous outbursts made under emotional distress, without deliberation or premeditation, bore little resemblance to *Crawford's* conception of statements elicited through formal, structured, police interrogation, but rejected a categorical rule that evidence admissible as an excited utterance is "ipso facto nontestimonial hearsay outside the scope of the Confrontation Clause and admissible into evidence" and instead held that "[e]ach case must be examined on its facts to determine if the evidence is testimonial and controlled by *Crawford*." *Id*. at 668–72.

In *Spencer v. State*, 162 S.W.3d 877 (Tex.App.Houston [14th Dist.] 2005, pet. ref'd). the court of appeals held that

the fact that a statement is an excited utterance is a factor that can be considered when determining whether the statement is testimonial. However, we note that Texas courts have held that a declarant's state of excitement can last long after the initial crime and that excited utterances can be made both spontaneously and in response to questioning.... It is not unreasonable to imagine a situation in which officers secure a scene and then begin formal, structured questioning of witnesses (or the victim) who are still under the stress of the situation. We are not convinced that responses to questions under such circumstances would be nontestimonial. Each situation should

be analyzed individually.... Accordingly, we decline to join those courts that have established a bright-line rule that excited utterances can never be testimonial.

*Id*. at 881. The Texarkana Court of Appeals agreed with the *Spencer* and *Davis* approach of analyzing the testimonial nature of a statement independently from its admissibility under the Texas Rules of Evidence in *Moore v. State*, 169 S.W.3d 467, 473–74 (Tex.App.-Texarkana 2005, no pet. h.). So too has the Dallas Court of Appeals rejected any per se approach:

We understand the State's position to be that, by definition, an excited utterance is not made under circumstances conducive to subjective contemplation of future legal proceedings. We cannot agree. Moreover, even if we were to assume the State is correct in such premise, we nevertheless conclude, based on *Crawford* itself, that subjective contemplation is irrelevant to an analysis of whether such out-of-court statements would be testimonial or non-testimonial. First, the test set out in *Crawford* is objective, not subjective. Second, even if the test were subjective, the declarant's perception could be determined only through cross-examination. *Crawford* identifies as testimonial "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." And, in criticizing the application of the *Roberts* reliability test, the Court stated, the Framers would be astounded to learn that ex parte testimony could be admitted against a criminal defendant because it was elicited by "neutral" government officers. But even if the court's assessment of the officer's motives was accurate, it says nothing about Sylvia's perception of her situation. Only cross-examination could reveal that.

Thus, even if the test were subjective, under *Crawford*, only cross-examination could reveal the complainant's subjective perception of her situation.

*Mason v. State*, 173 S.W.3d 105, 110 (Tex. App.-Dallas 2005, pet. dism'd) (citations omitted).

▮ Like many of the Texas courts of appeals, we too reject any per se or categorical approach. We agree with the First Circuit that

> the excited utterance and testimonial hearsay inquiries are separate, but related. While both inquiries look to the surrounding circumstances to make determinations about the declarant's mind-set at the time of the statement, their focal points are different. The excited utterance inquiry focuses on whether the declarant was under the stress of a startling event. The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (that is, excited by the stress of a startling event), would have had the capacity to appreciate the legal ramifications of her statement.

These parallel inquiries require an ad hoc, case-by-case approach. An inquiring court first should determine whether a particular hearsay statement qualifies as an excited utterance. If not, the inquiry ends. If, however, the statement so qualifies, the court then must look to the attendant circumstances and assess the likelihood that a reasonable person would have either retained or regained the capacity to make a testimonial statement at the time of the utterance.[41]

By way of guidance, the *Brito* court noted that generally statements made to police while the declarant (or another person) is still in personal danger are not made with consideration of their legal ramifications because the declarant usually speaks out of urgency and a desire to obtain a prompt response; thus, those statements will not normally be deemed testimonial.[42] But after the immediate danger has dissipated, a person who speaks while still under the stress of a startling event is more likely to comprehend the larger significance of his words: "If the record fairly supports a finding of comprehension, the fact that the statement also qualifies as an excited utterance will not alter its testimonial nature."[43]

## IV.

▮ Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*.[44] This is particularly so because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual

---

41. *Brito*, 427 F.3d at 61–62.

42. *Id.* at 62. *See also Spencer v. State*, 162 S.W.3d at 882 (collecting cases from Texas and other jurisdictions holding, generally, that preliminary questions by police at the scene of a crime while police are assessing and securing the scene are not testimonial).

43. *Brito*, 427 F.3d at 62.

44. *See, e.g., Lilly v. Virginia*, 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (when reviewing the admissibility of out-of-court statements over a Confrontation Clause objection, courts should independently review whether the evidence satisfies the demands of the Constitution); *United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir.2005) (asserted *Crawford* constitutional error is reviewed under *de novo* standard); *United States v. Cervantes–Flores*, 421 F.3d 825, 831 (9th Cir.2005) (same); *United States v. Brun*, 416 F.3d 703, 706 (8th Cir.2005) (same); *United States v. Summers*, 414 F.3d 1287, 1298 (10th Cir. 2005) (same); *United States v. Delgado*, 401 F.3d 290, 299 (5th Cir.2005) (same); *Lagunas v. State*, 187 S.W.3d 503, 513–14, 2005 WL 2043678, at *8, 2005 Tex.App. LEXIS 6957, *26 (Tex.App.-Austin 2005, no. pet. h.) (same); *Davis v. State*, 169 S.W.3d 660, 665 (Tex.App.-Austin 2005, no. pet. h.) (same).

declarant.[45] On that question trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation.[46] By contrast, appellate courts review a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule only for an abuse of discretion.[47] In part, the distinctive standards of review for hearsay objections and Confrontation Clause objections to the admission of excited utterances arise because the hearsay exception depends largely upon the subjective state of mind of the declarant at the time of the statement, whereas the issue of whether an out-of-court statement (excited or otherwise) is "testimonial" under *Crawford* depends upon the perceptions of an objectively reasonable declarant.[48]

**45.** *See Crawford,* 541 U.S. at 52, 124 S.Ct. 1354 (setting out one definition of "testimonial" statements as those " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' ") (citation omitted); *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004) (stating that the decisive inquiry under Confrontation Clause objection to hearsay is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime").

**46.** *See, e.g., Lilly,* 527 U.S. 116, 136–37, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (stating that appellate courts defer to trial court determinations of whether evidence is admissible under hearsay rules, but when that evidence is objected to as violative of the Confrontation Clause, " 'independent review is ... necessary ... to maintain control of, and to clarify, the legal principles' governing the factual circumstances necessary to satisfy the protections of the Bill of Rights") (quoting *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). The Supreme Court explained why deference to trial court assessments is inappropriate when the issue is whether evidence offered under a hearsay exception meets the requirements of the Confrontation Clause:

We, of course, accept the Virginia courts' determination that Mark's statements were reliable *for purposes of state hearsay law,* and, as should any appellate court, we review the presence or absence of historical facts for clear error. But the surrounding circumstances relevant to a Sixth Amendment admissibility determination do not include the declarant's in-court demeanor (otherwise the declarant would be testifying) or any other factor uniquely suited to the province of trial courts. For these reasons, when deciding whether the admission of a declarant's out-of-court statements violates the Confrontation Clause, courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause.

*Id.* at 136–37, 119 S.Ct. 1887; *see also Kothe v. State,* 152 S.W.3d 54, 62–63 (Tex.Crim.App. 2004) (question of whether police officer's conduct is objectively "reasonable" under Fourth Amendment is a question of constitutional law and is reviewed *de novo* ); *Garcia v. State,* 43 S.W.3d 527, 530 (Tex.Crim.App. 2001) (noting that "we give almost total deference to the trial court in determining what the actual facts are, and then we review *de novo* whether those facts are sufficient to give rise to reasonable suspicion").

**47.** *See Zuliani v. State,* 97 S.W.3d 589, 595–96 (Tex.Crim.App.2003) ("The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion"; trial court did not abuse its discretion in finding that declarant was " 'still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement").

**48.** *See Lilly,* 527 U.S. at 137, 119 S.Ct. 1887; *Brito,* 427 F.3d at 61 (noting that "[t]he excited utterance inquiry focuses on whether the declarant was under the stress of a startling event. The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (that is, excited by the stress of a startling event), would have had the capacity to appreciate the legal ramifications of her statement"); *see also United States v. Brun,* 416 F.3d 703, 706 (8th Cir.2005) (noting that appellate courts review trial courts' rulings on

 In this case, the court of appeals did not, at least explicitly, consider the effect of Mr. Norman's statement being an excited utterance when deciding whether it was testimonial. The court spent no time looking to the circumstances or assessing whether a reasonable person in Mr. Norman's shoes would have either retained or regained the capacity to make a testimonial statement and would have been aware that he was doing so at the time of the utterance. But the record tells us he would. On direct examination, Deputy Figueroa stated that although Mr. Norman smelt of alcohol and was still in pain, he was able to logically explain what had happened to him:

Q: I believe I asked you this earlier, I just want to clarify. When you spoke to Mr. Norman, was he able to relay the events about how he got in that bloody shape in a logical fashion to you?

A: Yes, ma'am, he was.

Q: Based on your training and experience—I think you told the jury earlier that you had made many scenes with intoxicated persons in your job—do you feel like Mr. Norman was impaired by that, by drinking to the point he could not relay events from that afternoon to you?

A: No.

Q: Did Mr. Norman and Mr. Pierce appear to know what was happening and where they were?

A: Yes.

Q: Did they know they were speaking about the assault that had happened to them that afternoon?

A: Yes, ma'am.

Q: Did Mr. Norman appear to you to still be in some way physically or emotionally affected by having been assaulted earlier?

A: Yes, ma'am.

　　* * *

Q: And I mean, based on what you could see, how they were acting, did they appear to be still affected by that?

A: Yes, ma'am, they did.

Q: Physically or emotionally or both?

A: I would go with both.

Q: Did you ask Mr. Norman questions about what had happened to him?

A: Yes, ma'am, I did.

Q: And was he able to tell you what happened?

A: Yes, he was.

Deputy Figueroa then recited Mr. Norman's description and naming of appellant, and he repeated Mr. Norman's rendition of appellant's racially charged statements. The conclusion that Mr. Norman was aware that he was being interviewed by Deputy Figueroa as part of a criminal investigation, and that the deputies came to the hospital to collect evidence,[49] is but-

the admissibility of hearsay evidence for an abuse of discretion but review Confrontation Clause objections to admission of evidence under *Crawford de novo* ); *United States v. Saget*, 377 F.3d 223, 230–31 (2d Cir.2004) (reviewing admissibility of out-of-court statement for abuse of discretion under hearsay rule, but *de novo* for Confrontation Clause analysis).

**49.** When Deputy Figueroa was asked why he went to the hospital to interview the two complaining witnesses he responded, "To get the facts, to try to gather up all the information, what one is saying, what another is saying, is it consistent, does it sound right or true or possible, does the evidence go that way. And basically, get to the bottom line, what exactly happened, why did it happen. That way when we document it, it's clear cut." Similarly, Deputy Willis said that his job was to take photographs and collect evidence. We find the officers' investigatory state of mind relevant, however, only to the

tressed by five photographs of Mr. Norman admitted at trial. In State's exhibits 25 and 29, Mr. Norman is facing forward, and appears to be looking directly (with his one functioning eye) at Deputy Willis as the officer photographed him. In State's exhibit 27, which was taken from behind Mr. Norman to show the injury at the back of his head, Deputy Figueroa is shown standing in uniform, with his badge visible, facing Mr. Norman and writing in a notebook.

Under these circumstances we conclude that a reasonable person in Mr. Norman's shoes would have either retained or regained the capacity to make a testimonial statement at the time of the utterance, and that a reasonable person would have appreciated the fact that the officers were conducting a criminal investigation and collecting evidence for a prospective prosecution. The fact that Mr. Norman's statement also qualifies as an excited utterance exception under the Texas hearsay rule does not alter its testimonial nature. Because Mr. Norman was not available to testify at trial, and appellant had no prior opportunity for cross-examination, the court of appeals properly held that admission of Mr. Norman's statement violated appellant's right to confrontation under the Sixth Amendment of the United States Constitution.[50]

## V.

██ Finding constitutional error, the court of appeals then determined that appellant's conviction need not be reversed because it concluded, beyond a reasonable doubt, that the error did not contribute to that conviction:

> The State presented three witnesses, each of whom testified that the defendant, unprovoked, struck several victims with a club/stick/board. First, Cinellia Fry testified that while she was stopped at a red light adjacent to the scene of the crime, she saw appellant grab a stick and viciously attack several unarmed men. Second, Jerry Hunter testified that he was sitting in his car with his family at the McDonald's across the street from the scene, approximately 100 to 150 feet away. Hunter stated that he saw some men arguing, and that the appellant walked over to a pick-up truck, picked up a club, and attacked several men. Finally, Samuel Pierce, one of the victims of the attack and an acquaintance of appellant, testified that he was assaulted, identified his attacker as appellant, and stated that he was hit several times with a board.
>
> The defense presented three witnesses. Their testimony detailed the events after the assault, when they arrived at the abandoned gas station. None of the three testified as to what actually occurred between the victims and appellant.
>
> Thus, of the witnesses testifying at trial, those who actually witnessed the crime testified that appellant was the attacker. Moreover, one of those witnesses was an acquaintance of appellant and identified appellant as the attacker. The evidence overwhelmingly establishes appellant's guilt, even disregarding the erroneously admitted evidence. The testimony establishes that appellant intentionally caused physical contact with another that resulted in serious bodily injury, while knowing that the victims would regard the contact as offensive or provocative, as required by the Texas Penal Code.... Accordingly, we hold that the error committed by the

---

extent that it is communicated or apparent to the declarant. *See* note 37 *supra*.

**50.** *Wall,* 143 S.W.3d at 851.

trial court was not harmful, and thus overrule appellant's second issue.[51]

We agree with the result and reasoning of the court of appeals as far as it goes. Under Rule 44.2(a) of the Texas Rules of Appellate Procedure, we must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence."[52] If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt.[53] If an appellate court rules that a constitutional error in the admission of evidence is harmless, it is, in essence, asserting that the nature of that evidence is such that it could not have affected the jury's deliberations or verdict.[54] Although the most significant concern is the error and its effect, the presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm.[55] In this case, ·the evidence of appellant's guilt was overwhelming and the out-of-court statement by Mr. Norman added nothing to that evidence nor was it at all likely to sway a jury from a state of non-persuasion to persuasion of his guilt.

The court of appeals did not address whether Mr. Norman's out-of-court recital of appellant's racially charged statement was harmful to appellant's punishment. Perhaps this failure was because appellant simply asked for a new trial on appeal, and did not specifically request a new punishment hearing if the court of appeals found that a new trial on guilt was unwarranted. Appellant did, however, argue in his supplemental brief to the court of appeals in light of *Crawford v. Washington* that the out-of-court statement was both inflammatory and harmful for purposes of assessing a proper punishment. Appellant, both in the court of appeals and here, argues that "the punishment phase is the phase in which Mr. Norman's statements would have had the most prejudicial effect" because "they provide a racially based motive for the assault" and indicate appellant's "racial intolerance and bigotry." The State counters that "appellant's extensive criminal record, coupled with the brutal beating that he gave to the three men at the time of the charged offense, was more than enough to justify the sentence that was assessed against the appellant. There is no indication that the appellant's isolated statements to Mr. Norman played that large of a role in the jury's punishment verdict."

■■■ The court of appeals has not yet addressed these arguments. In some situ-

---

**51.** 143 S.W.3d at 852–53.

**52.** *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex. Crim.App.2001); *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000).

**53.** See *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (in addressing whether constitutional error is harmless, the critical inquiry is whether the error may have contributed to appellant's conviction or punishment; the standard of review "requir[es] the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"); *Yates v.*

*Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) ("To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record"); *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (the issue under *Chapman* is "whether the . . . verdict actually rendered in *this* trial was surely unattributable to the error").

**54.** *Chapman,* 386 U.S. at 24, 87 S.Ct. 824.

**55.** *See Wesbrook,* 29 S.W.3d at 119.

ations, the admission of testimonial statements that are harmless beyond a reasonable doubt at the guilt stage might well have a demonstrable impact at the punishment stage. In other situations, they likely would have no impact or equal impact at both stages. We therefore remand this case to the court of appeals to decide if the confrontation violation was harmful during the punishment stage.