# Court of Appeals
## Tenth Appellate District of Texas

10-25-00057-CR

Tyriq Bradford,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
361st District Court of Brazos County, Texas
Judge David G. Hilburn, presiding
Trial Court Cause No. 22-03641-CRF-361

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Tyriq Bradford guilty of the offense of aggravated sexual assault of a child and assessed his punishment at life in prison.[1]  *See* TEX. PENAL CODE ANN. § 22.021.  In one issue on appeal, Bradford challenges the trial court's admission, over his hearsay and confrontation objections, of

---

[1] Based on the circumstances as indicted, this offense was punishable by a minimum of twenty-five years in prison without the possibility of parole.  *See* TEX. PENAL CODE ANN. § 22.021(f)(2); TEX. GOV'T CODE ANN. § 508.145(a)(4).

testimony and video evidence of the complainant's three out-of-court statements to her mother identifying Bradford as the perpetrator of the offense.[2]  We affirm.

RELEVANT BACKGROUND

On July 4, 2022, six-year-old B.M. went missing while playing hide-and-seek with other children near her home.  Her mother and several others began searching for her.  Bradford eventually carried B.M. home.  She was wrapped up in a blanket and she was naked from the waist down.

The State designated B.M.'s mother as the outcry witness under article 38.072 of the Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.072.  At a pretrial hearing, the trial court made the preliminary finding that the State complied with the notice requirements of article 38.072 and questioned whether B.M. would be available to testify at trial.  *Id.* at §§ 2(b)(1), 2(b)(3).  The State explained that B.M. would be called as a witness, but noted that she may not be able to "engage in meaningful direct or cross-examination with regard to the substance of this case."[3]

---

[2] An issue is multifarious when it raises more than one specific complaint, and we are permitted to reject multifarious issues on that basis alone.  *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n. 6 (Tex. Crim. App. 2000).  This issue is multifarious because it addresses two distinct complaints about three different statements admitted into evidence through multiple sources.  However, in the interest of justice, we will address each of Bradford's arguments.

[3] B.M.'s mother later testified that B.M. had not been able to discuss the incident with any adult since B.M. told her what Bradford did.

During the pretrial hearing, B.M.'s mother described the scene after Bradford brought B.M. home. She explained that B.M. was emotional, crying, and in pain as she held the child on the porch. Many bystanders were crying and yelling in both Spanish and English. Without being prompted, B.M. told her mother in Spanish, "[I]t was Tyriq. He had a mask and he wanted to kill me." The body camera of a nearby law enforcement officer also captured this statement and the video clip was admitted at the hearing. B.M.'s mother explained that B.M. was subsequently transported to a hospital in College Station. While there, she spontaneously told her mother, "it was Tyriq, Mommy, Tyriq." Due to extensive physical injuries, B.M. was transferred to a different hospital in Temple the next day for an additional forensic medical exam and a surgical procedure. Her mother testified that prior to her surgery, B.M. was still emotional and in pain from the assault when she demonstrated with her hands what Bradford did to her, stating, "Tyriq had done like this in my parts (demonstrating) … 'my little ass.'"

After the hearing, the trial court found all three statements were reliable based on time, content, and circumstances, noting that whether the statements were ultimately admissible under article 38.072 hinged on whether B.M. was available for cross-examination at trial. *See id.* at §§ 2(b)(2), 2(b)(3).

At trial, the State's first witness was the Sexual Assault Nurse Examiner ("SANE") who conducted B.M.'s initial forensic medical examination at the College Station hospital. The SANE swabbed B.M.'s fingernails and mons and collected her t-shirt for DNA analysis. She described how B.M. was still crying and in pain despite having been administered pain medication, and explained that B.M. was unable to give a patient history "due to her condition" and discomfort. B.M. was covered in debris, her face and ears were swollen, her entire face was covered in petechiae, and clear fluid was "weeping" from her ears. The SANE described a "very defined line around her neck that was red above it," which indicated that B.M. was strangled with a ligature. She also observed "many, many, many" scratches, bruises, and abrasions similar to "a rug burn" on much of B.M.'s body, which she found consistent with being dragged. There was fresh and dried blood around B.M.'s vaginal area and thighs and swelling to her external genitalia. Notably, B.M. also had a large laceration to her perineum, so extensive that it caused concern for internal injury.

The SANE from the Temple hospital testified next. She explained that she began taking photos of B.M. after she arrived. She described how "[B.M.] became completely inconsolable. She was grabbing her mom, crying. She would not let me near her." She testified that B.M. had to be put under

anesthesia "to adequately assess her injury as well as her level of discomfort and pain. It was just required to perform the exam at baseline." This nurse also discussed several of B.M.'s physical injuries, adding that her perineum laceration "extend[ed] from the outside all the way through up into her vagina and there was a - - which means that section of her hymen was completely missing as well," requiring a surgical "pediatric OB/GYN repair."

Outside of the jury's presence, the State explained that it intended to call B.M.'s mother as its third witness and have her testify to B.M.'s three statements identifying Bradford as her assailant. The prosecutor expressed uncertainty about B.M.'s ability to testify during trial as required to make the mother's testimony admissible under article 38.072. Instead, the State argued that the statements were admissible as excited utterances. Bradford objected that the statements were hearsay and that their admission would violate his right to confrontation because B.M. might not testify.

Ultimately, the trial court expressly declined to admit the statements under article 38.072; instead, the court admitted the statements as excited utterances and overruled Bradford's hearsay and confrontation objections. Bradford was granted running objections and also re-urged his objections in front of the jury.

B.M.'s mother testified in front of the jury to all three of B.M.'s statements. The clip of the body camera video that captured B.M.'s first statement in Spanish was later admitted into evidence during the law enforcement officer's testimony, over Bradford's hearsay and confrontation objections.

Later during trial, the State called B.M. to testify. When asked whether she remembered a time when "something really bad happened" to her, she shook her head. She also shook her head when asked whether she remembered going to the hospital. Bradford's attorney was then given an opportunity to cross-examine B.M. Defense counsel only asked questions unrelated to the criminal offense.

ANALYSIS

Regarding the interplay between excited utterances and testimonial hearsay, the Court of Criminal Appeals has explained that

> the excited utterance and testimonial hearsay inquiries are separate, but related. While both inquiries look to the surrounding circumstances to make determinations about the declarant's mindset at the time of the statement, their focal points are different. The excited utterance inquiry focuses on whether the declarant was under the stress of a startling event. The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (that is, excited by the stress of a startling event), would have had the capacity to appreciate the legal ramifications of her statement.

These parallel inquiries require an ad hoc, case-by-case approach. An inquiring court first should determine whether a particular hearsay statement qualifies as an excited utterance. If not, the inquiry ends. If, however, the statement so qualifies, the court then must look to the attendant circumstances and assess the likelihood that a reasonable person would have either retained or regained the capacity to make a testimonial statement at the time of the utterance.

*Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (quoting *U.S. v. Brito*, 427 F.3d 53, 61-62 (1st Cir. 2005)).

Hearsay

We review a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule for an abuse of discretion. *Wall*, 184 S.W.3d at 743. We are instructed to review the trial court's evidentiary ruling in light of what information was before the trial court at the time the ruling was made. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

The "excited utterance" hearsay exception applies to a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). In determining whether a statement qualifies as an excited utterance, the "critical determination is 'whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event' or condition at the time of the statement." *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (quoting

*McFarland v. State,* 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).  The time elapsed and whether the statement is in response to a question are relevant but non-dispositive factors we may consider.  *Zuliani*, 97 S.W.3d at 595-96.

As to the first statement offered through B.M.'s mother's testimony and the body camera video, Bradford's appellate argument focuses on the sufficiency of the excited-utterance predicate laid by the State in front of the jury.  He does not consider all of the evidence that was before the trial court at the time of its excited-utterance ruling.  Before B.M.'s mother testified to the first statement in front of the jury, the trial court had heard the pretrial hearing testimony from B.M.'s mother, reviewed the body camera video clip, and listened to the testimony of both SANE nurses.  As Bradford conceded at trial, the first statement was made "immediately after [B.M.] was found" after she had been sexually assaulted and strangled.  B.M.'s mother's pretrial testimony and the body camera video confirm that B.M. was crying, emotional, and in pain from her extensive bodily injuries caused by the assault.  Based on the evidence before the trial court, we find that it did not abuse its discretion in determining that B.M.'s first statement qualifies as an excited utterance.  As such, the trial court did not err in admitting B.M.'s mother's testimony and the body camera video of B.M.'s first statement over Bradford's hearsay objection.

Though Bradford acknowledges that the excited-utterance exception does not have bright-line temporal requirements, he contends that B.M.'s statements at the College Station and Temple hospitals were too remote to be excited utterances. Although the record is unclear as to exactly how much time passed between the offense and each of B.M.'s hospital statements,[4] we find that the trial court reasonably could have determined that both statements were made while B.M. was still "under the stress of the excitement" that the assault caused.

Appellate courts have upheld the admission of statements as excited utterances after an appreciable amount of time elapsed between the event and the statement. *See, e.g., Zuliani*, 97 S.W.3d at 592, 596 (twenty hours); *Apolinar v. State*, 106 S.W.3d 407, 418-19 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (four days). Courts have also considered the magnitude of the startling event and the degree of excitement and shock it would produce in analyzing whether the time elapsed before the declarant made the statement was justifiable. *See, e.g., Ross v. State*, 154 S.W.3d 804, 811 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Here, clearly, a deeply traumatic event occurred. The College Station SANE described B.M.'s numerous physical injuries and attested that she was crying

---

[4] The State points to evidence in the record supporting its argument that less than twenty-four hours passed between B.M.'s first and last statements.

and still in pain despite having been administered pain medication. Detailed photographs and diagrams depicting the severity of B.M.'s injuries were also admitted into evidence. Later, at the Temple hospital, B.M. was still "inconsolable," was "grabbing her mom, crying," and required anesthesia so that hospital staff could assess her condition. The testimony and other evidence of B.M.'s emotional and physical condition at each hospital support the trial court's finding that her second and third statements to her mother qualified as excited utterances. The trial court did not abuse its discretion in overruling Bradford's hearsay objections to each hospital statement.

Confrontation

We review de novo a trial court's constitutional legal ruling. *Wall,* 184 S.W.3d at 742.

The Confrontation Clause prohibits admission of an out-of-court testimonial statement of a witness who is absent from trial unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine him. U.S. CONST. amend. VI.; *Crawford v. Washington,* 541 U.S. 36, 68 (2004); *Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011).

"[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n. 9. We find that B.M.

satisfied the confrontation requirement of being present at trial, despite the limited testimony elicited from her. If a witness is present at trial, the right to confrontation requires that the witness be placed under oath, the defendant be given the opportunity for cross-examination, and the factfinder be provided the opportunity observe the witness's demeanor. *Cervantes v. State*, 594 S.W.3d 667, 671 (Tex. App.—Waco 2019, no pet.) (citing *Maryland v. Craig*, 697 U.S. 836, 845-46 (1990)). B.M. physically appeared at trial, and the record indicates that she demonstrated an understanding of the difference between the truth and a lie before testifying. B.M. shook her head when asked whether she remembered a time when "something really bad happened" to her and whether she remembered going to the hospital. Bradford's attorney was given the opportunity to cross-examine B.M., but only asked questions unrelated to the offense. Even "memory loss does not render a witness absent for Confrontation Clause purposes if she is present in court and testifying." *Woodall*, 336 S.W.3d at 644. B.M. was present and responded to questions asked on both direct and cross-examination, and the jury was able to observe her demeanor.

Moreover, we find that all three of the statements were nontestimonial. In determining whether a statement is "testimonial" as contemplated by the Confrontation Clause, we objectively evaluate the circumstances in which the

statement is provided, focusing on the primary purpose of the statement "by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant." *Wall*, 184 S.W.3d at 742-43. When the primary purpose is something other than criminal investigation, "the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination," and the confrontation inquiry ends. *Michigan v. Bryant*, 562 U.S. 344, 361 (2011). In this case, we find persuasive the relationship between the individuals giving and receiving the statements, the location and circumstances surrounding each statement, and the lack of indicia suggesting that B.M. had the capacity to appreciate the legal ramifications of her statements.

Statements are more likely to be testimonial if they are made to government officers rather than friends or family members. *See, e.g., Flores v. State*, 170 S.W.3d 722, 723-24 (Tex. App.—Amarillo 2005, pet. ref'd), *cert. denied*, 549 U.S. 859 (2006). Further, Texas courts have recognized that young children may lack the sophistication necessary to understand that their statements could be used prosecutorially. *See, e.g., Lagunas v. State*, 187 S.W.3d 503, 518 (Tex. App.—Austin 2005, pet. ref'd). B.M. was a six-year-old child who made each of the complained-of statements in conversations with her mother. Though B.M. made her first statement in the presence of a law

enforcement officer, it was not directed to the officer or in response to any questioning by the officer. *See Wilson v. State*, 195 S.W.3d 193, 203 (Tex. App.—San Antonio 2006, no pet.) (concluding that a child's statement to her parent in the presence of a police officer was non-testimonial). Nothing in the record indicates that B.M.'s primary purpose in making the statements was to create evidence for prosecution. Her age, particularly when considered in conjunction with her emotional state at the time, are factors strongly indicating that her statements to her mother were nontestimonial.

Additionally, the location of each statement and their attendant circumstances support our conclusion that the three statements were nontestimonial. Each statement was made in an informal setting, not in a formal legal proceeding or investigation. *See Flores v. State*. 170 S.W.3d at 723-24. B.M.'s first statement was made on the front porch shortly after she was sexually assaulted and strangled. B.M. was crying as her mother held her and tried to console her when B.M. spontaneously identified Bradford as her assailant. Her second and third statements were made in hospitals while she was undergoing head-to-toe physical examinations and preparing for surgery. Each hospital statement, according to B.M.'s mother, was also made spontaneously.

We find that, viewing the evidence as an objectively reasonable declarant standing in B.M.'s shoes, the primary purposes of B.M.'s statements were "something other than criminal investigation." We thus conclude that the statements were non-testimonial in nature and were not admitted in violation of Bradford's confrontation rights.

## Conclusion

Having overruled Bradford's sole issue on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: April 16, 2026

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
Do not publish
CRPM

