IN THE COURT OF CRIMINAL APPEALS


OF TEXAS
 

 




NO. PD-0974-05




 


EX PARTE JAMES NUNES, Appellant






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


TRAVIS COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Meyers,
Johnson, Keasler and Cochran, JJ., joined. Price, Womack and Holcomb, JJ.,
concurred.



O P I N I O N 



 Tex. R. App. P. 26.2(a)(1) requires a defendant to file a notice of appeal within 30 days "after
the day the trial court enters an appealable order." We granted discretionary review to reexamine
this Court's precedents holding that the act of entering an appealable order occurs when the trial
court signs the order.

 On December 4, 2002, appellant was convicted of a Class A misdemeanor assault committed
against his then-wife, Roberta, for which appellant received a probated sentence of two years. 
Roberta did not testify at trial. Appellant did testify at trial. We set out some of the facts from the
opinion of the Court of Appeals.

 On May 13, 2002, appellant and his wife, Roberta Nunes, had an argument that
escalated into a physical confrontation. The following facts are not in dispute. 
Between 5:30 and 6:00 p.m. on that day, Mrs. Nunes arrived at appellant's place of
employment, Dell Computers. She called appellant from the lobby. After
approximately fifteen minutes, appellant came downstairs. The couple argued about
appellant's cellular telephone bill, which Mrs. Nunes believed evidenced that
appellant was having an affair. To avoid a confrontation in the office, the couple
agreed to continue the conversation at home.


 Appellant and Roberta Nunes left in separate cars. She drove behind him, at times
aggressively and "right on [his] bumper." They continued to argue with one another
on their cell phones as they drove home. At home, as was their usual practice,
appellant parked in the driveway and Mrs. Nunes parked in the garage. With Mrs.
Nunes yelling, they continued to argue. As appellant began unlocking the door, Mrs.
Nunes began to hit appellant on his back and head with her fists. Appellant struck
back, by his own testimony, three or four times. He tried to "swat" her away and
then grabbed her neck and pushed her away and over the arm of a nearby couch. By
his own testimony, appellant admitted that, as he tried to swat her off and she would
not let go[.]


 I finally just reached and grabbed her neck and tried to get her off of
me, and then I finally squeezed a little bit to get her away from me
and I pushed her to get her off of me. And she went backwards and
she kind of fell backwards over the corner of the couch and hit her
head.


 Roberta Nunes fell from the couch to the floor, hitting her head on a coffee table hard
enough to knock a chip out of the table and leaving a small piece of flesh on the
table.


 At 6:56 pm., Mrs. Nunes called the 9-1-1 emergency operator, asking for assistance
and advising the operator that appellant had tried to kill her. Appellant also spoke
to the operator, asking for the police to be sent over and explaining that his wife was
exaggerating.


Nunes v. State, 2003 Tex. App. LEXIS 10151, 03-03-00106-CR (Tex.App.-Austin, December 4,
2003, pet. ref'd) (not designated for publication). (1)


 The Court of Appeals' opinion also describes what several police witnesses observed when
they arrived at the residence such as "indications that [Roberta] had been assaulted, including a piece
of flesh on the coffee table that appeared to come from the top of her head." Id. The Court of
Appeals' opinion also recounts Roberta's out-of-court statements that were admitted into evidence
through these and other prosecution witnesses over appellant's hearsay objections. Id. (2) This
included an out-of-court statement Roberta made to a hospital emergency room physician that
appellant "tried to strangle her." Id.

 In a direct appeal to the Court of Appeals, appellant claimed that Roberta's out-of-court
statements were erroneously admitted into evidence under the excited utterance exception to our
state hearsay rule set out in Tex. R. Evid. 803(2) and under the Confrontation Clause of the Sixth
Amendment to the United States Constitution. After noting that "appellant testified to each of the
challenged [out-of-court] statements," except for Roberta's out-of-court statement that appellant tried 
to strangle her, the Court of Appeals decided that the trial court did not abuse its discretion to admit
Roberta's out-of-court statements as excited utterances. (3)

 The Court of Appeals issued its opinion on December 4, 2003. Appellant filed a
discretionary review petition in this Court. On March 8, 2004, the United States Supreme Court
decided Crawford v. Washington (4) which "reconceived much of the Court's prior Confrontation
Clause jurisprudence in a manner that is potentially inconsistent" (5) with the trial court's and the Court
of Appeals' admission of Roberta's out-of-court statements. (6) On July 28, 2004, this Court refused
discretionary review. (7)

 On December 21, 2004, appellant filed in the convicting court a post-conviction habeas
corpus application pursuant to Article 11.072, Tex. Code Crim. Proc. (8) This application alleged,
among other things, that appellant's trial counsel was ineffective (9) for failing to make a Sixth
Amendment Confrontation Clause objection to the admission of Roberta's out-of-court statements
independently of his hearsay objections to these statements. To support this application, appellant's
trial counsel stated in an affidavit that he mistakenly believed that his hearsay objections to this
evidence also encompassed any Sixth Amendment Confrontation Clause objections even though he
had been informed to the contrary by another lawyer in his firm.

 The convicting court adopted the State's numerous proposed findings and conclusions which
concluded, among other things, that "[t]he Sixth Amendment does not require and trial counsel
cannot be found ineffective for failure to foresee future changes in the law that might affect their
clients." These findings also contained a finding to the effect that a Sixth Amendment Confrontation
Clause objection by appellant's trial counsel to the admission of Roberta's out-of-court statements
would not have been meritorious under then-existing United States Supreme Court case law. (10)

 Apparently following the procedures set out in Article 11.07, Tex. Code Crim. Proc., the
convicting court signed an order recommending that this Court deny habeas corpus relief and
ordering the clerk to send the findings and other things to this Court. Compare Article 11.07, § 3(c),
Tex. Code Crim. Proc., (requiring clerk to transmit copy of habeas corpus application and other
things to this Court) & Article 11.07, § 5, Tex. Code Crim. Proc., (this Court grants or denies relief
on Article 11.07 habeas corpus application) with Article 11.072, § 8, Tex. Code Crim. Proc.,
(convicting court grants or denies relief on Article 11.072 habeas corpus application with right of
appeal to intermediate appellate court). (11) The convicting court's order states that it "adopts the above
State's Memorandum, Findings of Fact and Conclusions of Law as its own and recommends that the
relief [appellant] requests should be DENIED."

 The convicting court judge signed this order which recites that it was "signed and entered"
on March 15, 2005. The convicting court, however, did not notify the parties until April 25, 2005,
that it had signed the order. The file-stamp on the order indicates that it was filed by the clerk on
April 27, 2005. (12) The habeas record contains an undated letter from the convicting court to the
parties. This letter states:

 Defendant's Writ of Habeas Corpus came on to be heard the 7th day of March, 2005. 
After considering the motions, affidavits, and evidence submitted, the court is of the
opinion the Writ should be denied.


 The Order is attached and was signed by the Court on the 15th day of March, 2005. 
However, Counsel did not receive the Order and Findings of Fact. The same are
being delivered by regular mail and Fax on the 25th day of April, 2005. Any delay
from 3/15/05 until 4/25/05 should be attributed to the Court, not Counsel.


 Appellant filed a notice of appeal on April 29, 2005. On May 20, 2005, the Court of Appeals
dismissed appellant's appeal for lack of jurisdiction because his notice of appeal was not filed within
30 days after the convicting court signed and entered the order appealed from, and because
appellant's notice of appeal, filed within the fifteen-day grace period, was not accompanied by a
motion for extension of time to file a notice of appeal. Ex parte James Nunes, No. 03-05-00255-CR
(Tex.App.-Austin, May 20, 2005) (not designated for publication). The Court of Appeals' opinion
states:

 James Nunes seeks to appeal from an order denying relief in a habeas corpus
proceeding. See [Article 11.072]. The trial court's order was signed and entered on
March 15, 2005. The deadline for perfecting appeal was therefore April 14. [Rule
26.2(a)(1)]. Nunes filed his notice of appeal on April 29, 2005. Although the notice
of appeal was filed within the fifteen-day grace period, Nunes did not file a motion
for extension of time. See id. rule 26.3 Under the circumstances, we lack
jurisdiction to dispose of the purported appeal in any manner other than dismissing
it for want of jurisdiction. See Slaton v. State, 981 S.W.2d 208 (Tex. Crim. App.
1998); Olivo v. State, 918 S.W.2d 519, 522-23 (Tex. Crim. App. 1996).

 

 We exercised our discretionary authority to review this decision. The two grounds upon
which we granted discretionary review state:

 Is the term 'entered', as used in [Rule 26.2(a)(1)], synonymous with the term
'signed'?


 Is an attorney ineffective for failing to preserve Confrontation Clause error
independently from hearsay error?[ (13)]


 Appellant argues that "entering" an order under Rule 26(a)(1) should not be construed
synonymously with "signing" the order. He claims that "entering" an order should be construed to
mean "entering a document into the record of a case" by "being entered into the permanent record
with the Clerk of the Court" which occurs after a trial court signs the order. (Italics in original). (14) 
Appellant argues that the appellate clock for filing a notice of appeal should not begin to run until
this occurs. He claims that this is logical and common-sense interpretation of "enter" which also
fulfills the critical role of notice. Appellant's brief asserts:

 It only makes sense that when an order is signed outside of open court, the date on
which the order is entered in the record "starts the clock" for filing a Notice of
Appeal. This is when the litigants first have notice that an order was signed, and of
the contents of the order. It is also the first time when a Notice of Appeal can, as a
practical matter, be filed.


 A Notice of Appeal filed prior to the entry of the complained-of order in the Clerk's
record would be premature, as there could be absolutely nothing in the record to
appeal. Counsel is not able to search the Judge's chambers and courtroom on a
routine basis in order to locate any signed, but concealed, orders. A trial court may
sign an order, put it in her desk to rethink it, and never transmit it to the clerk of the
court. Or she may not file it for months or years. Clearly, court orders are not
operative until they are entered into the record or announced in open court. The only
way to make sense of this is to deem that the appellate time clock begins to run when
a written order is made part of the public record, by being entered into the permanent
record with the Clerk of the Court.


 Indeed, one can imagine what would occur had the Petitioner filed a Notice of Appeal
on March 15, 2005,-the day the order was signed. The appeal would have been
dismissed as premature as no final order was in the record. May an appeal remain
premature until after it becomes untimely? That is the logical and unavoidable
conclusion from the Court of Appeals opinion in this case.[ (15)]


(Italics in original).

 Appellant also claims that Article 11.072, § 7(b), Tex. Code Crim. Proc., supports his
construction of "enter" in Rule 26.2(a)(1). His brief asserts:

 [Article 11.072, § 7(b)] is of great interest in this context. It states that "[a]t the time
an order is entered under this section, the clerk of the court shall immediately, by
certified mail, return receipt requested, send a copy of the order to the applicant and
to the state." [Footnote omitted]. (emphasis added.) Thus, an order cannot be
entered more than six weeks prior to its being in the hands of the clerk for this
immediate service. In fact, the law leaves an open question whether the judge or the
clerk physically performs the duty of entering an order. The logical interpretation
would leave that physical duty to the clerk.


 The law requires the clerk to have access to a document at the time it is entered, in
order to comply with [Article 11.072, § 7(b)]. Under [Article 11.072, § 7(b)] it is a
logical impossibility for an order to be entered without the clerk's participation. The
logical construction is that it is the record of the case, in the clerk's care, that the
order must be entered into.


 Moreover, [Article 11.072, § 7(a), Tex. Code Crim. Proc.] describes the duties of
the judge in the case of a frivolous application as being to "enter a written order
denying the application as frivolous." (emphasis added.) Obviously, the legislature
considered signing the order and entering it as distinct actions. Otherwise, the rule
would merely require the judge to sign the order.


 It should be pointed out that nothing in [Article 11.072] gives any reason to believe
the date an order is signed is relevant to determination of when time to file a Notice
of Appeal starts to run. [Rule 26.2] says nothing about a trial court judge's signing
an order. Under under [sic] [Rule 26.2(a)(1)], a defendant has thirty days after the
day a written order is entered [footnote omitted] to file a notice of appeal. The date
upon which the order is signed is not relevant.


(Italics in original).


 This Court's precedents, however, do not support appellant's construction of "enter" in Rule
26.2(a)(1). In State v. Rosenbaum, (16) a majority of this Court decided that "entered" is synonymous
with "signed" under the statute authorizing a State's appeal as set out in Article 44.01(d), Tex. Code
Crim. Proc. (17) Only two judges would have adopted the construction of "enter" advanced by
appellant in this case. See Rosenbaum, 818 S.W.2d at 403-405, 405 (Baird, J., concurring, joined
by McCormick, P.J.) ("entered by the court" should be construed to mean "the date the signed order
is file marked by the clerk"). In specifically rejecting this construction of "enter," the majority
opinion in Rosenbaum, 818 S.W.2d at 402, stated:

 Indeed, the date of actual entry into the court's record should be irrelevant vis-a-vis
appeals by the State under [Article 44.01(d)]. Entry into the records of the court is
merely ministerial in nature. (Citation omitted). As a practical matter, a judge may
never really know when a signed order, judgment, or ruling is physically entered into
the record. There are no consistent deadlines for clerical entry into the record in the
courts throughout Texas. To rule that an appeal must be made within a certain time
period following entry into the record would serve a gross injustice to all litigants
because none would be following the same timetable.

 

 Less than three months after deciding Rosenbaum, a majority of this Court followed that
decision in Sutton v. Bage (18) again rejecting the dissenters' construction of "enter" advanced by
appellant in this case. (19) It is, therefore, clear that this Court has considered and rejected the position
advanced by appellant in this case. We further note that this Court's almost fifteen-year-old
precedent in Rosenbaum has not unleashed the parade of horrors described in appellant's brief. (20)

 We nevertheless find it unnecessary in this case to reconsider precedents such as
Rosenbaum. (21) The record reflects that the convicting court, consistent with Article 11.07 procedures,
entered an order recommending that this Court deny appellant's request for habeas corpus relief. 
The convicting court's order does not specifically deny [or grant] appellant's requested relief as
required by Article 11.072, § 6(a), Tex. Code Crim. Proc., (22) which would trigger appellant's right
to appeal under Article 11.072, § 8. (23) In this case, therefore, it does not matter how this Court might
construe the term "enter" in Rule 26.2(a)(1) because there is no valid order for appellant to appeal
from anyway. The Court of Appeals correctly determined that it had no jurisdiction over the appeal
even though it may have given the wrong reasons.

 The judgment of the Court of Appeals is affirmed, and the case is remanded to the convicting
court for further proceedings consistent with this opinion.


 Hervey, J.


Delivered: May 3, 2006

Do Not Publish

1. We cite to the Court of Appeals' unpublished opinion for the purpose of setting out some of
the facts of this case and not for any precedential value. See Tex. R. App. P. 47.7 (intermediate
appellate court unpublished opinions have no precedential value but may be cited with the notation
"(not designated for publication)."; Tex. R. App. P. 77.3 (unpublished opinions have no precedential
value and must not be cited as authority by counsel or by a court). 
2. For example, the Court of Appeals' opinion states:


 Austin Police Officer Randy Garcia arrived at the Nunes home at 7:05 p.m. Through
the front door of the residence, he heard a woman crying and screaming hysterically. 
When Roberta Nunes answered the door, he observed that she was "crying,
hysterical, fearful, very emotional." She immediately told Garcia that her husband
had hit her and banged her head against a coffee table. She had visible injuries. The
officer attempted to calm her and then began to ask her questions to determine what
happened.


Nunes, 2003 Tex. App. LEXIS 10151.
3. The Court of Appeals' opinion states:


 That Roberta Nunes was still dominated by the emotions, excitement, fear, or pain
of the event is supported by the record. Moreover, except for Mrs. Nunes's
characterization of her husband's intent "to strangle her," appellant testified to each
of the challenged statements when he testified on his own behalf. The two doctors
also testified as to her injuries and their cause. In addition, Mrs. Nunes's medical
records, entered into evidence without objection, contained notes by medical
personnel that she had a hematoma on the top of her head and bruises on her neck
and that Mrs. Nunes stated, "husband tried to strangle me" and "husband banged her
head against the tile counter." When a court has overruled an objection to the
admission of evidence, and that same evidence is later admitted without objection,
the right to complain about the admission of the evidence on appeal is waived. 
(Citation omitted). We hold that the trial court did not abuse its discretion in
admitting [Roberta's out-of-court statements].


Nunes, 2003 Tex. App. LEXIS 10151. 
4. 541 U.S. 36 (2004).
5. Mungo v. Duncan, 393 F.3d 327, 332 (2d Cir. 2004), cert. denied, 125 S.Ct. 1936 (2005).
6. See also Wall v. State, 2006 Tex. Crim. App. LEXIS 16 (Tex.Cr.App. No. PD-1631-04,
January 18, 2006) (setting out analytical framework for deciding when admission into evidence of
out-of-court statements qualifying as excited utterances under Rule 803(2) violates Crawford and
the Confrontation Clause to the Sixth Amendment of the United States Constitution). 
7. See Nunes v. State, Tex. Crim. App. LEXIS 1225 (Tex.Cr.App. No. PD-0253-04, July 28,
2004).
8. Article 11.072, § 1, Tex. Code Crim. Proc., states that "[t]his article establishes the
procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which
the applicant seeks relief from an order or a judgment of conviction ordering [probation]."
9. See generally Strickland v. Washington, 466 U.S. 668 (1984).
10. See Ohio v. Roberts, 448 U.S. 56, 66 (1980); Salazar v. State, 38 S.W.3d 141, 155
(Tex.Cr.App.), cert. denied, 534 U.S. 855 (2001) (admission into evidence of out-of-court excited
utterances by an unavailable witness did not violate Sixth Amendment's Confrontation Clause).
11. Appellant's brief also asserts:


 It appears that the Clerk declined to follow [the convicting court's] order as written,
as the Order required that the file be transmitted to this Honorable Court and not the
Court of Appeals. Instead, the clerk properly handled the matter under [Article]
11.072.
12. The record is silent on why the parties did not learn until April 25, 2005, that the convicting
court had signed the order on March 15, 2005. Appellant's brief states:


 Although the order read that it was "signed and entered" on March 15, 2005, the trial
court judge did not immediately give that document to a clerk or transmit it to the
parties. He kept the signed document private, and took no actions to enter it as part
of this case. (Citations to record omitted). The record is silent as to the reason why
the judge withheld the document: whether error, uncertainty as to the document's
propriety, or mere absent-mindedness. The record shows that the first time anyone
associated with the case was informed the document had been signed was on April
25, 2005. (Citations to record omitted). The document was not in fact entered into
the Record until April 27, 2005. (Citations to record omitted).


(Italics in original). 
13. This issue was not addressed by the Court of Appeals. We, therefore, exercise our discretion
to dismiss this ground as improvidently granted. See Tex. R. App. Proc. 69.3.
14. Under this construction of "enter," the order in this case, signed on March 15, 2005, was not 
"entered" until April 27, 2005, when the clerk filed the order among the other documents and papers
in the case as shown by the clerk's file-stamp. See Black's Law Dictionary (7th Ed.) at 552 (defining
"enter" as, among other things, "[t]o put formally before a court or on the record"). 
15. We note, however, that under Tex. R. App. Proc. 27.1(b) a prematurely filed notice of
appeal is usually "effective and deemed filed on the same day, but after, . . . the appealable order is
signed by the trial court." (Emphasis supplied). It is also significant that Rule 27.1(b) refers to an
appealable order being signed, not entered, by the trial court. 
16. 818 S.W.2d 398, 401-02 (Tex.Cr.App. 1991).
17. Like Rule 26.2(a)(1), Article 44.01(d) provides that a prosecuting attorney may not appeal
"later than the 15th day after the date on which the order, ruling, or sentence to be appealed is entered
by the court." See also Tex. R. App. Proc., 26.2(b) (State's notice of appeal "must be filed within
15 days after the day the trial court enters the order, ruling, or sentence to be appealed"). 
18. 822 S.W.2d 55, 57 (Tex.Cr.App. 1992).
19. See Bage, 822 S.W.2d at 57 (McCormick, P.J., dissenting, joined by Baird, J.) ("instant case
presents in dramatic fashion the mischief that is potential in this Court's holding in [Rosenbaum]")
and at 58 (Baird, J., dissenting, joined by McCormick, P.J.).
20. For example, appellant argues:


 Indeed, it is impossible to conceive of an interpretation of the terms due process and
due course of law that would permit a notice of appeal to remain premature until it
becomes untimely. If the result of a case can be kept hidden from the litigants
themselves until the time to file a Notice of Appeal has expired, the right to appeal
is empty, available only at the arbitrary whim of a judge. A judge who retires to
consider a matter cannot rule, refusing to file or announce his ruling until after time 
to appeal has passed, without denying the litigants resort to appellate procedures so
carefully crafted into Texas law. Thus, any principles of due process and due course
of law would be entirely subverted and eviscerated by a holding that "entering" an
order means anything other than entering it into the records of the case.


(Italics in original).
21. See generally Robbins v. State, 88 S.W.3d 256, 261 (Tex.Cr.App. 2002) (merely
demonstrating that a precedent is "wrong" is not, standing alone, sufficient to disregard stare decisis
principles); Awadelkariem v. State, 974 S.W.2d 721, 725-26 (Tex.Cr.App. 1998) (non-exhaustive
list of factors that appellate courts should consider in deciding whether to overrule a precedent). 
22. Article 11.072, § 6(a), provides that "[n]ot later than the 60th day after the day on which the
state's answer is filed, the trial court shall enter a written order granting or denying the relief sought
in the application."
23. Article 11.072, §8, provides that the applicant may appeal "[i]f the application is denied in
whole or part."