Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



**MEMORANDUM OPINION**

No. 04-09-00609-CR

Edler Ray **GILSTRAP**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-7937
Honorable Ron Rangel, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  January 12, 2011

AFFIRMED

This appeal arises from the conviction of Appellant Edler Ray Gilstrap for murder. Gilstrap argues that: (1) his Sixth Amendment right of confrontation was violated; (2) the evidence is factually insufficient to support his conviction; and (3) his right to a unanimous verdict was violated. We affirm the trial court's judgment.

## BACKGROUND

On January 14, 2007, Gilstrap's sister and niece went to his home. Gilstrap answered the door without any clothes on and told his sister and niece that his wife, Sandra, was gone and that he did not know where she was. Gilstrap's niece noticed that Sandra's car was still in the driveway and started looking for her in the house. She found Sandra lying on the floor of the bedroom. Sandra's face was swollen, her eyes swollen shut, and her mouth was full of blood.

Sandra was rushed to the hospital and placed on life support. After two weeks, Sandra's life support was withdrawn, and she died. The cause of her death was subdural hemorrhaging, which was caused by blunt force trauma to the head. Gilstrap was tried and convicted for Sandra's murder. Gilstrap appeals his conviction.

## RIGHT OF CONFRONTATION

In his first point, Gilstrap argues that his right to confront his accuser was violated when the colleague of the medical examiner who performed the autopsy on Sandra testified at trial. A criminal defendant has a constitutional right to confront a witness who testifies against him. U.S. CONST. amends. VI & XIV; TEX. CONST. art. I, § 10; *Crawford v. Washington*, 541 U.S. 36, 53 (2004). A testimonial out-of-court statement is inadmissible unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him. *Crawford*, 541 U.S. at 53–54.

Dr. Frost, the medical examiner who performed the autopsy on Sandra's body, did not testify at trial. Instead, Dr. Rajesh Kannan, another medical examiner who worked with Dr. Frost and had reviewed the pertinent medical records and autopsy report, testified as to the cause of Sandra's death. The autopsy report was not admitted into evidence, but photographs referenced in the report were discussed and displayed before the jury. Gilstrap argues that

because Dr. Kannan relied on and testified about matters contained in the autopsy report, Gilstrap's right to confront Dr. Frost, the author of the autopsy report, was violated.

## A. Standard of Review

We review the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). We review a constitutional legal ruling of whether a statement is testimonial or non-testimonial de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

## B. Dr. Kannan's Testimony

The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U. S. at 68. Thus, we first address whether the autopsy report is testimonial. An autopsy report is testimonial if the medical examiner would reasonably expect the statements in the report to be used prosecutorially. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531 (2009). At the time of Sandra's autopsy, Gilstrap had already been arrested and the police provided Dr. Frost with investigative documents for the preparation of the autopsy report. Because Dr. Frost would reasonably expect his report to be used prosecutorially under these circumstances, the autopsy report was testimonial hearsay. *See id.*; *Wood v. State*, 299 S.W.3d 200, 213 (Tex. App.—Austin 2009, pet. ref'd).

Though we agree that Dr. Frost's autopsy report was testimonial, the report was not admitted into evidence. We therefore turn to Dr. Kannan's testimony regarding the autopsy. Dr. Kannan testified that he had reviewed the medical records, investigative reports, and photographs contained within the autopsy report.[1] Based upon his review, Dr. Kannan concluded that Sandra

---

[1] As part of his department's rules, he reviewed and signed-off on Dr. Frost's autopsy report before it was released.

died from blunt force head trauma, although he could not discern the object that caused the injury. As part of his opinion, he reviewed several autopsy photographs with the jury that revealed injury to Sandra's brain.[2] During cross-examination, Dr. Kannan testified to his independent conclusion that the cause of Sandra's death was subdural hemorrhaging, which was caused by blunt force trauma to the head. Under further cross-examination, Dr. Kannan stated that based on the investigative information available at the time of the autopsy, the trauma was more likely caused by an assault. He attributed the source of this information to the medical-legal investigators rather than the autopsy report.[3] Gilstrap contends that Dr. Kannan's testimony moved beyond reliance on photographs found in the autopsy report to the text of the autopsy report.[4] The State responds that Dr. Kannan did not disclose any statements from the autopsy report, and his testimony regarding the cause of death was his independent conclusion.

Although Gilstrap complains that Dr. Kannan's testimony reveals his reliance on Dr. Frost's testimonial statements, the record fails to link Dr. Kannan's conclusions to specific language in the autopsy. Dr. Kannan testified as an expert witness and as such, may base his opinion on facts or data that are not admissible in evidence. *See* TEX. R. EVID. 703. "[T]he Confrontation Clause is not violated merely because an expert bases an opinion on inadmissible testimonial hearsay. The testifying expert's opinion is not hearsay, and the testifying expert is available for cross-examination regarding his opinion." *Wood*, 299 S.W.3d at 213. "When an expert bases an opinion on testimonial hearsay but does not disclose the testimonial hearsay on which that opinion is based, the jury hears only the expert's direct, in-court testimony." *Id.*

---

[2] Photographs taken during an autopsy are not testimonial hearsay. *Wood*, 299 S.W.3d at 215; *accord* TEX. R. EVID. 801(a).

[3] "Q: So some other person, yet another person, provided you with information that you based your viewpoints on, correct? A. That's correct."

[4] Gilstrap points to Dr. Kannan's testimony on cross-examination that the assault was more likely the cause of the hemorrhaging than a fall as evidence beyond the pictures and medical records.

Because Dr. Kannan testified to his independent conclusion concerning Sandra's cause of death and did not testify to any of the statements contained in Dr. Frost's autopsy report, Dr. Kannan's testimony did not violate Gilstrap's right of confrontation. *See Melendez-Diaz*, 129 S. Ct. at 2531; *Wood*, 299 S.W.3d at 210.

## SUFFICIENCY OF THE EVIDENCE

Gilstrap's second issue is that the evidence is factually insufficient to show that: (1) an attack on Sandra caused the subdural hemorrhaging that led to her death; and (2) Gilstrap was the assailant.

The Court of Criminal Appeals recently determined that there is no meaningful distinction between the factual sufficiency standard of *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its subsequent line of cases, and the legal sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010). Guided by *Brooks*, we now apply the *Jackson* legal sufficiency standard of review to a factual sufficiency challenge. *See id.*

Under the *Jackson* standard, an appellate court examines "all of the evidence in the light most favorable to the verdict," asking if a jury was "rationally justified in finding guilt beyond a reasonable doubt." *Id.* at 899. We must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," and we must view the evidence in the light most favorable to the verdict. *Jackson*, 443 U.S. at 319. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).

In his briefing, Gilstrap acknowledges that Dr. Kannan testified that blunt force trauma caused Sandra's death but points out that Dr. Kannan could not identify the object that caused the injury. Gilstrap argues that the only evidence in the record linking him to an attack on Sandra was the testimony of his niece, Rachel Emily, and that her credibility was impeached by a prior inconsistent statement. But because the jury was the sole judge of Rachel Emily's credibility, her testimony linking Gilstrap to the attack would have enabled a rational jury to have found that Gilstrap attacked Sandra. *See Jackson*, 443 U.S. at 319; *Wesbrook*, 29 S.W.3d at 111.

Moreover, Mike Garza, Gilstrap's neighbor, testified that Gilstrap said to him soon after Sandra was found, "I beat the hell out of her." With this testimony, viewed in the light most favorable to the prosecution, a rational jury could have determined that it was, in fact, Gilstrap who had attacked Sandra, and that this blunt force trauma caused the subdural hemorrhaging that caused her death. *See Jackson*, 443 U.S. at 319. Thus, the evidence at trial was sufficient to sustain Gilstrap's conviction. *See id.*

## RIGHT TO A UNANIMOUS VERDICT

Gilstrap's final issue is that he was deprived of his right to a unanimous verdict. See TEX. CONST. art. I, § 19; TEX. CODE CRIM. PROC. ANN. arts. 36.29(a), 37.02, 37.03. Specifically, he complains that the jury returned a general verdict to a disjunctive murder instruction. Gilstrap argues that half the jury could have found him guilty of "intentionally or knowingly causing the death" of Sandra, and the other half could have found him guilty of murder by committing an act clearly dangerous to human life with the intent to cause serious bodily injury. See TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (West 2003).

In *Garcia v. State*, 246 S.W.3d 121, 140 (Tex. App.—San Antonio 2007, pet. ref'd), we held that a jury charge that provided a disjunctive instruction including the first two types of murder under section 19.02(b) of the Texas Penal Code contained an instruction on "only one single crime of murder." *Id.* at 141. We, therefore, overrule Gilstrap's final issue. *See also Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991).

**CONCLUSION**

The judgment of the trial court is affirmed.

Rebecca Simmons, Justice

DO NOT PUBLISH