

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00088-CR

———————————————————

ELBERT FRANKLIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F20-180-211

---

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

A jury convicted Appellant Elbert Franklin of the second-degree felony of indecency with a child by contact[1] and assessed his punishment at seventeen-and-one-half years in prison. After sentencing, Franklin appealed. He raises five issues:

1. The trial court violated his right to confrontation and cross-examination by allowing someone to testify about the sexual assault examination other than the nurse who performed the examination.

2. The trial court erred by including lesser-included offenses in the jury charge at the State's request over Franklin's objection.

3. The trial court abused its discretion by admitting the complainant's forensic interview (through both the testimony of the interviewer and the video of the interview) in its entirety.

4. The trial court abused its discretion by denying Franklin's motion for continuance—filed after the jury's guilty verdict but before the punishment trial—to secure an expert witness to assist Franklin at the punishment trial.

5. In the absence of a valid transfer order, the district court in which Franklin was tried lacked subject matter jurisdiction.

We hold (1) Franklin's right to confrontation and cross-examination was not violated because the primary purpose of the examination in question was medical, not forensic; (2) the State has the right to request a lesser-included offense, so the trial court did not abuse its discretion by including lesser-included offenses in the jury charge at the State's request; (3) assuming, without deciding, that the trial court erred by admitting the complainant's forensic interview in its entirety, any error was

---

[1] *See* Tex. Penal Code Ann. § 21.11(a)(1), (d).

harmless; (4) the trial court did not abuse its discretion by denying Franklin's motion for continuance because Franklin knew before the trial began that the trial court had denied his request for funds to hire the expert; and (5) the allegedly invalid transfer order became a moot issue after Franklin had been reindicted. Accordingly, we overrule all five of Franklin's issues and affirm the trial court's judgment.

## I. Background

The indictment alleged that Franklin had committed the offense of continuous sexual abuse of a child, a first-degree felony punishable by imprisonment in the penitentiary for life or for any term of not more than 99 years or less than 25 years. *See* Tex. Penal Code Ann. § 21.02(h). Lesser-included offenses within the indictment were:

- aggravated sexual assault of a child, a first-degree felony punishable by imprisonment in the penitentiary for life or for any term of years of not more than 99 years or less than 5 years and a fine not to exceed $10,000; *see id.* §§ 12.32, 22.021(e); and

- indecency with a child by contact, a second-degree felony punishable by imprisonment in the penitentiary for any term of years of not more than 20 years or less than 2 years and a fine not to exceed $10,000; *see id.* §§ 12.33, 21.11(a)(1), (d).

*See Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011).

The complainant, who had just turned fifteen years old at the time of trial, testified that her stepfather, Franklin, had sexually abused her for "a few years." After hearing all the evidence, the jury found Franklin guilty of indecency with a child by

contact (and by implication, not guilty of continuous sexual abuse of a child or aggravated sexual assault of a child) and assessed his punishment at seventeen-and-one-half years in prison. *See* Tex. Code Crim. Proc. Ann. art. 37.14; *State v. Restrepo*, 878 S.W.2d 327, 328 (Tex. App.—Waco 1994, pet. dism'd). On appeal, Franklin does not challenge the sufficiency of the evidence.

## II. Discussion

### A. First Issue: Right to Confrontation

After the complainant made her outcry, she was taken to Julie Carriker, a sexual assault nurse examiner (SANE), for what Franklin describes as "a forensic interview and examination." At trial, however, Carriker was not the testifying witness; rather, Debbie Ridge, the SANE coordinator, was. Arguing that "[Ridge] wasn't there; she didn't observe anything. She's not the right witness[,]" Franklin objected on the basis of the confrontation clause. The trial court overruled Franklin's objection.

Franklin argues that while the complainant's examination was not taken by law enforcement, "it [was] taken specifically to create evidence used for prosecution." Franklin quotes *Ohio v. Clark* for the proposition that "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" 576 U.S. 237, 245, 135 S. Ct. 2173, 2180 (2015) (quoting *Michigan v. Bryan*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011)).

4

The United States Supreme Court in *Crawford v. Washington* held that a defendant's right to confrontation under the Sixth Amendment is violated when a witness is permitted to relate out-of-court "testimonial" hearsay statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004); *see also De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). Statements are testimonial only when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2274 (2006). Additionally, the United States Supreme Court has noted that medical records created for treatment purposes are not "testimonial" within the meaning of *Crawford*. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S. Ct. 2527, 2533 n.2 (2009). Once an objection is made based on *Crawford*, the proponent bears the burden to demonstrate its admissibility. *De La Paz*, 273 S.W.3d at 680–81. We review de novo the trial court's ruling admitting evidence over a confrontation objection. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

While it is true that sexual assault examinations frequently end up as evidence in criminal trials, their primary purpose is nevertheless not forensic. Rather, as Ridge testified, their primary purpose is to determine, based on the history that the patient provides, whether the patient has health issues related to the sexual assault and, if so, how best to treat them:

5

[Ridge:] A SANE exam is -- they're -- there are differences, depending on which type of exam. We have two categories, which are acute and nonacute, but the similarities between the two are still the same when it comes to the physical exam.

So it's a head-to-toe assessment of the patient. It is, you know, looking at the patient, listening to the -- taking the patient history, the medical history, for purpose of treatment, diagnosis.

We also are looking at other things, like, you know, follow[-]up resources for that patient. If it is an acute window, which, by the state of Texas, now across the state, is a patient that has been assaulted in less than 120 hours. If it is a nonacute, that would be greater than 120 hours. And it has varied through the years, but that law just passed in Texas across the state in September -- September 1 of 2019.

[The State:] Okay. And you mentioned that part of the SANE exam is getting a history from the patient.

A. Yes. A medical history.

Q. Okay. And what is the purpose of getting that history from a patient?

A. The purpose of the -- of obtaining the medical history is the same purpose for any patient, whether it's a sexual assault patient or any patient that may even present at ER. You have to have a medical history to be able to formulate a treatment plan and diagnosis and be able to treat that patient.

Q. Fair to say that in a SANE exam, or, like you said, in any other kind of medical setting, what that patient tells you guides everything that you do in treating that patient?

A. Yes, ma'am.

The patient's history helps the doctor or nurse to determine how best to treat the patient. *See Nutall v. State*, No. 10-19-00359-CR, 2021 WL 3773558, at *2 (Tex.

6

App.—Waco Aug. 25, 2021, no pet.) (mem. op., not designated for publication). Ridge read to the jury the medical history that the complainant provided.

Other aspects of Ridge's testimony suggested that there was a forensic element to the process. Ridge described a SANE as "a registered nurse who is specially trained to conduct medical *forensic* examinations on patients that present with the complaint of sexual assault." [Emphasis added.] In the same vein, when the sexual assault was acute, Ridge acknowledged that the SANE collected evidence:

> So the difference in that acute, it's performed in a hospital setting in one of our rooms, and that particular exam would have evidence collection. So there would be a kit, which is called a sexual assault kit, that has -- they're like Q-tips. So it's, like, several Q-tips, different pieces of things that we can collect evidence which would be appropriate for that patient, child or adult.

Later, however, Ridge drew a line between forensic and medical examinations and indicated that the sexual assault examination was on the medical side:

> [Defense counsel:] Right. So the physical findings are clinically insignificant, fair to say, with regard to whether or not anything happened?
>
> [Ridge:] I don't know if I'd call it insignificant. I think that the clinical findings -- are you talking about just the physical findings?
>
> Q. Yes.
>
> A. Because clinically, the medical history is the most important piece of this for a child.
>
> Q. Correct. The physical findings, yes.
>
> A. The physical findings do not dictate whether an assault occurred or not just because there's an absence of injury.

7

Q. So the statements that are made by the alleged victim, that is what controls the narrative here, not the -- not the physical findings?

A. Well, it's not a statement. I don' t take statements, nor do I do interviews. So as a nurse, as a medical provider, we take a medical history.

Overall, however, the primary purpose of Carriker's examination was medical. Because there was evidence before the court that the purpose of the examination was to render medical treatment to the complainant, we hold that the trial court did not err in admitting Ridge's testimony, which was necessarily based on Carriker's examination report. *See Kirkman v. State*, No. 01-18-00978-CR, 2020 WL 2026372, at *5 (Tex. App.—Houston [1st Dist.] Apr. 28, 2020, pet. ref'd) (mem. op., not designated for publication); *Metoyer v. State*, No. 13-18-00573-CR, 2019 WL 3331634, at *2 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, pet. ref'd) (mem. op., not designated for publication); *Garrett v. State*, No. 12-15-00208-CR, 2017 WL 1075710, at *3 (Tex. App.—Tyler Mar. 22, 2017, no pet.) (mem. op., not designated for publication); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex. App.—San Antonio 2009, pet. ref'd).

We overrule Franklin's first issue.

## B. Second Issue: Lesser-Included Offenses

In Franklin's second issue, he contends that the trial court erred by submitting lesser-included offenses in the jury charge at the State's request. Franklin objected that

whether to request a lesser-included offense in the jury charge was strictly the defendant's option. The trial court overruled Franklin's objection.

The State is allowed to seek and obtain a lesser-included offense conviction. *Grey v. State*, 298 S.W.3d 644, 651 (Tex. Crim. App. 2009); *Villarreal v. State*, No. 02-19-00405-CR, 2021 WL 1323414, at *2 (Tex. App.—Fort Worth Apr. 8, 2021, pet. ref'd) (mem. op., not designated for publication). The trial court thus did not abuse its discretion by submitting lesser-included offenses at the State's request.

We overrule Franklin's second issue.

## C. Third Issue: Forensic Interview

In Franklin's third issue, he argues that the trial court erred in admitting the complainant's entire forensic interview. Unlike the medical examination in Franklin's first issue, the interview in question in his third issue was genuinely forensic.

Before these criminal proceedings started, Child Protective Services had performed an investigation on the complainant's family, and on March 14, 2018, a CPS representative had interviewed the complainant. During that interview, the complainant denied any physical, sexual, or emotional abuse.

Shortly thereafter, however, on March 20, 2018, the complainant made an outcry to her mother. A few days later, the complainant was forensically interviewed. This forensic interview is the one about which Franklin complains.

Priscilla Valenzuela conducted a forensic interview of the complainant on March 23, 2018, at the Children's Advocacy Center for North Texas. She explained,

9

"The purpose of the interview is to gather information from a child or adolescent whenever there are any allegations of abuse or neglect -- so we talk to them in a neutral, nonleading way -- and to also reduce the number of times a child is interviewed." Valenzuela testified that the complainant made an outcry, identified Franklin as the perpetrator, and gave a general time frame during which the abuse occurred.

When the State attempted to introduce a video of the March 23, 2018 interview, Franklin objected that Valenzuela was not the outcry witness and that the video was hearsay. *See* Tex. Code Crim. Proc. Ann. art. 38.072; Tex. R. Evid. 801, 802. The trial court admitted the video, and it was played to the jury. On appeal, the State maintains that the video was admissible as showing prior consistent statements to rebut an express or implied charge that the complainant had recently fabricated or had acted from a recent improper influence or motive to testify. *See* Tex. R. Evid. 801(e)(1)(B).

Assuming, without deciding, that the trial court erred by admitting Valenzuela's testimony and the video, we hold that any error was harmless. *See* Tex. R. App. P. 44.2(b). The complainant testified that Franklin had sexually abused her on many occasions over a lengthy period. Franklin, who testified, denied sexually abusing the complainant and asserted that the complainant's testimony was inconsistent and

10

should not be believed.[2] The jury heard the complainant's testimony, the outcry witness's (the complainant's mother's) testimony, and the evidence from the sexual-assault examination. Thus, even without the forensic interview, the jury had evidence before it that the complainant was alleging that Franklin had sexually abused her many times over many months. The jury, however, did not convict Franklin of continuous sexual abuse of a child. The jury did not even convict Franklin of aggravated sexual assault of a child. Rather, the jury convicted Franklin of one instance of indecency with a child by contact. From that, we conclude that the jury disbelieved—or entertained a reasonable doubt as to the truth of—a great deal of the complainant's testimony. In that context, we fail to see how the admission of Valenzuela's testimony or the video of the forensic interview had any impact whatsoever. *See id.*

We overrule Franklin's third issue.

---

[2]The January 31, 2020 reindictment suggests perhaps that the complainant had changed her story since the case had begun. The original September 14, 2018 indictment alleged that Franklin had committed the offense of continuous sexual abuse of a child by committing two or more acts of indecency with a child by contact over a period of thirty days or more. In contrast, the January 31, 2020 reindictment alleged that Franklin had committed the offense of continuous sexual abuse of a child by committing two or more acts of indecency with a child by contact or aggravated sexual assault of a child. On the other hand, when a child's testimony varies, the variance is not necessarily the product of manipulation. The complainant's counselor testified that disclosure was a process and that some children found some sexual acts more embarrassing than others. The sexual assault nurse examiner testified that children may be embarrassed and may want to simply keep the abuse a lifelong secret. When testifying, the complainant said that she did not like to talk about his private area touching her private area because it was "just too embarrassing."

## D. Fourth Issue: Continuance

After the jury had returned a guilty verdict but before the trial on punishment, Franklin moved for a continuance of the punishment proceedings to obtain the assistance of an expert witness. The trial court denied that request.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Kinnett v. State*, 623 S.W.3d 876, 906 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd). The Texas Code of Criminal Procedure addresses the standard when a party moves for a continuance after trial has begun:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

Tex. Code Crim. Proc. Ann. art. 29.13.

Here, Franklin cannot show that something unexpected occurred after the trial had begun. In his "Ex Parte Motion for Expert Witness Funding to Obtain Imag[ing] of Defendant's Brain Using fMRI"—filed over two months before trial—Franklin had requested the same assistance from an expert. In his ex parte motion, Franklin had requested expert-witness funding of $20,000 to obtain an fMRI imaging of his brain. Franklin's motion for continuance requested the same relief. Consequently, Franklin knew before trial began that the trial court had not authorized the $20,000 to

12

have an fMRI analysis performed. We hold that the trial court did not abuse its discretion. *See id.*

We overrule Franklin's fourth issue.

## E. Fifth Issue: Subject Matter Jurisdiction

Franklin contends that the court in which his case was tried—the 462nd District Court—did not have subject matter jurisdiction over his case because the court that had transferred his case to the 462nd District Court—the 211th District Court—had itself never properly obtained jurisdiction over his case. To understand Franklin's argument requires following the trek of Franklin's case through three district courts—the 158th, the 211th, and 462nd District Courts.

Franklin's original indictment was filed on September 14, 2018, in the 158th District Court as cause number F18-2508-158. Thereafter, on October 8, 2018, the local administrative judge transferred Franklin's case from the 158th District Court to the 211th District Court (the October 8, 2018 transfer order). This is the transfer order with which Franklin finds fault.

Still later, however, Franklin was reindicted. The reindictment was filed on January 31, 2020, in the 211th District Court under cause number F20-180-211.

Less than a month later, on February 20, 2020, Franklin's cause number F20-180-211 was transferred from the 211th District Court to the 462nd District Court (the February 20, 2020 transfer order). Both the sending and receiving judges signed this order. Franklin does not dispute the validity of the February 20, 2020 transfer

13

order. The 462nd District Court ultimately tried Franklin's case under cause number F20-180-211.

Franklin contends that (1) because neither the judge of the 158th District Court nor the judge of the 211th District Court signed the October 8, 2018 transfer order, the 211th District Court never properly acquired jurisdiction and (2) the 211th District Court—never having properly acquired jurisdiction—was powerless to transfer his case to the 462nd District Court. Franklin further contends that he preserved this issue because a few days before trial in the 462nd District Court, he filed a plea contesting that court's jurisdiction. The 462nd District Court denied Franklin's plea.

As a preliminary matter, although Franklin frames his issue as one involving subject matter jurisdiction, the fact that a transfer order contains error or is missing entirely is a procedural matter, not a jurisdictional one. *Evans v. State*, 61 S.W.3d 688, 690 (Tex. App.—Fort Worth 2001, no pet.). Article 4.05 of the Texas Code of Criminal Procedure vests district courts with original jurisdiction in felony, criminal cases. Tex. Code Crim. Proc. Ann. art. 4.05. Thus, all three district courts in question had jurisdiction over both Franklin and the offense charged. *See Evans*, 61 S.W.3d at 690. If a trial court lacks jurisdiction over the defendant or the offense charged (which is not the case here), its judgment is void, but an error or irregularity involving statutory procedure—such as the error that Franklin alleges—generally renders a

14

judgment merely voidable, not void. *See id.* As noted earlier, Franklin contends that he preserved his complaint in the 462nd District Court.

Section 24.003 of the Texas Government Code authorizes a district judge to transfer a criminal case to another district court provided that the judge of the court to which the case is transferred consents. Tex. Gov't Code Ann. § 24.003(b)(1), (b-1). Franklin's complaint is that the October 8, 2018 transfer order was signed by an administrative judge and not by the judges of the two courts involved—the 158th and the 211th District Courts. Franklin concludes that the October 8, 2018 transfer order thus does not comply with the Texas Government Code.

Any error in the October 8, 2018 order transferring the original indictment from the 158th District Court to the 211th District Court was mooted when Franklin was later reindicted in the 211th District Court. A reindictment is a new indictment. *Mitchell v. State*, No. 02-19-00267-CR, 2021 WL 4205008, at *1 n.1 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (mem. op., not designated for publication); *Wisenbaker v. State*, 782 S.W.2d 534, 536 (Tex. App.—Houston [14th Dist.] 1989, no pet.). Thus, at the time of the February 20, 2020 transfer order, the 211th District Court's jurisdiction was based on the January 31, 2020 reindictment, not on the October 8, 2018 transfer order. *See* Tex. Code Crim. Proc. Ann. art. 4.16.

We overrule Franklin's fifth issue.

### III. Conclusion

Having overruled Franklin's five issues, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 25, 2022