**Affirm and Opinion Filed December 6, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00980-CR**

**FREDDIE GOINES BEVERLY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 19-90211-422-F**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

A jury found appellant Freddie Goines Beverly guilty of aggravated sexual assault. The finding was enhanced by two prior offenses, and the trial court assessed appellant's punishment at eighty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single issue, appellant argues the trial court abused its discretion when it denied his request to recall and cross-examine the complainant about her criminal record after the State opened the door to that testimony. We affirm the trial court's judgment.

## Background

Before trial of the case began, the State offered a motion in limine, seeking an order that—unless they first approached the bench for a hearing on the matter—defense witnesses and attorneys would not:

> mention, allude to, refer to, or begin to testify in any manner whatsoever, or elicit testimony from witnesses regarding the following: that [the complainant] has been arrested in the past for misdemeanor and felony offenses, and that [the complainant] has had formal criminal charges and/or convictions for offenses, and that [the complainant] is currently on deferred adjudication probation for felony offenses, and that [the complainant] is currently in the custody of and under court-ordered treatment at SAFP (Texas Substance Abuse Felony Punishment Facility).

Counsel for appellant did not object to the motion, and the trial court granted it.

The first witnesses at trial were Daniel and Jessica Smith, a married couple who were driving home and came upon appellant punching the complainant in the middle of an intersection in Forney. They stopped the car, and Mr. Smith yelled at appellant to stop. Appellant ran away; Mr. Smith chased him and called 911. Mrs. Smith, meanwhile tended to the complainant:  the young woman had cuts, and her face was swollen; she was naked from the waist down; and she was crying hysterically. She told Mrs. Smith that appellant had tried to rape her. Mrs. Smith also called 911. The police arrived quickly and arrested appellant.

The complainant testified to the events of that day. She had met appellant earlier in the day, when she was visiting at his family's home. She made two trips to a convenience store with appellant and his nephew to buy beer and tobacco. She

testified that she had had enough beer then, but appellant wanted to go back to the store, so the two of them returned. Police officers—who testified they were responding to a call about a couple drinking outside the store—arrived at the store and drove the two of them home separately. Appellant came by the complainant's home later, and the two were walking together back to the store when appellant suddenly began punching her, tore her shorts off, and attempted to penetrate her with his penis. When he could not, he digitally penetrated her, and attempted to force her to perform oral sex on him. She ran away, trying to reach an intersection where someone could see and help her. She collapsed at the intersection where the Smiths stopped.

After the complainant testified and was cross-examined, the State called Susan Velez, a certified sexual assault nurse examiner (SANE), who examined the complainant the following morning. Velez testified, using the report she created at the time of the exam, to what the complainant told her, including that she had not voluntarily ingested alcohol over the last twenty-four hours. The prosecutor asked Velez to read the "Patient's History of Events" from her report. For our purposes, the relevant portion of that section of the report involved the time period before the assault, when police were called to the convenience store. Velez read:

> I was walking in my neighborhood. There's only one really black guy in the neighborhood, so he wanted to walk to the store with me. He had got in trouble. . . . He got caught for having [an] open container so they ran his record and mine. They let me go because my record is fucking clean. They gave me a ride home.

–3–

After the State rested, defense counsel asked to recall the complainant "for the purpose of confronting her as to whether or not that is true or not true that she had, had a clean record." Counsel argued that the complainant had "multiple law enforcement contacts" and thus what she had told the SANE created a false impression for the jury. The trial court heard arguments from both sides but denied appellant's request to recall the complainant.

The jury found appellant guilty of aggravated sexual assault. Appellant pleaded true to two enhancements, and the trial court sentenced him to eighty years' confinement. This appeal followed.

## The Confrontation Issue

Appellant's single issue complains of the trial court's refusal to allow him to confront the complainant concerning her criminal record. The court ruled that the evidence elicited from the SANE's report was not testimonial in nature and that impeaching the complainant based on that statement would be improper.

At the outset, we have serious concerns about the State's conduct that initiated this issue. The defense complied with the State's motion in limine and made no reference to the complainant's criminal history during its cross-examination of her. Then, after the complainant had finished testifying, the State directed Velez to read the section from her report that included the complainant's assertion that her record was clean. The issue is complicated by the fact that the statement came only indirectly from the complainant, who was not under oath at the time that she made

the statement to Velez.[1] Regardless, we conclude that the State opened the door to evidence about the complainant's criminal history.

The State argues that appellant did not preserve this issue for our review because he made neither a detailed offer of proof concerning the excluded evidence nor a formal bill of exception. We disagree that the issue was not preserved. The trial court discussed the precise issue with counsel at some length. Appellant's counsel confirmed his complaint and his request:  that the complainant was on deferred adjudication probation for more than one felony, that she had had multiple "law enforcement contacts," and that the statement read by the SANE was "just a materially false statement." Appellant's counsel argued he should have the right to confront the complainant about that statement. The discussions and arguments before the court, involving counsel for the State as well as appellant's counsel, centered on whether the statement was testimonial or not, a matter at the heart of a Confrontation Clause issue. *See, e.g., Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006) (admission of hearsay statement made by non-testifying declarant violates Sixth Amendment if statement was testimonial and defendant lacked prior opportunity for cross-examination). We conclude that appellant preserved his confrontation complaint.

---

[1] Indeed, the trial court stated that if the complainant had made the statement directly, "then I do think at that point you would be able to impeach her through cross-examination."

Nevertheless, even if we were to assume—without deciding—that the trial court's ruling violated appellant's confrontation rights, a violation of the Confrontation Clause is subject to a harmless error analysis. *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). When the error involves a trial court's unconstitutionally restricting cross-examination, we must first assume that the damaging potential of the cross-examination had occurred. *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006). In this case, that would mean assuming that the complainant had been impeached with her criminal history. Then we must ask whether admission of that impeachment evidence, considered within the context of the trial as a whole, would likely have made a significant impact upon the mind of an average juror. *Id.* Our answer to this question is informed by examining the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986)).

Accordingly, we assume that the complainant had been recalled in this case, and that appellant had been able to impeach her with her multiple "law enforcement contacts." We evaluate the *Van Arsdall* factors as follows:

> (1) We agree with appellant that the complainant's testimony was critical to the State's case.

(2) Any testimony that the complainant had a criminal record would not have been cumulative, at least in part because—prior to the SANE testimony—all witnesses and attorneys had complied with the State's limine motion.

(3) In significant respects, the complainant's testimony concerning the assault was corroborated:  by the uninterested witnesses who came upon her as she was being beaten by appellant, by police testimony that officers found her clothing where she testified appellant had torn it off, by her injuries showing that she had run from appellant and fallen in the process. Indeed, as to the elements of the aggravated sexual assault, the single uncorroborated element was the act of digital penetration.

(4) Appellant conducted a full cross-examination of the complaining witness when she was on the stand. Appellant has not identified any area of inquiry he was denied other than the complainant's criminal record.

(5) As we have related above, the State produced testimony from uninterested witnesses who came upon appellant assaulting the complainant; as a result, certain issues never implicated the complainant's credibility. The Smiths observed appellant's violent attack on her. Mr. Smith pursued appellant until he was arrested, so there was no issue as to identity in the case. And Mrs. Smith testified to the complainant's emotional demeanor, physical injuries, and claim of attempted rape. Police officers testified to finding the complainant's clothes and phone where she reported appellant had begun to attack her.

Appellant's counsel's closing argument largely attempted to raise a doubt about the single issue of penetration and to have the jury consider the lesser included offense of attempted sexual assault. To be sure, counsel asked for a not guilty verdict, but his argument focused on undermining the penetration element. His argument was based on the SANE report's indication that the complainant answered "no" when asked whether penetration had occurred. The State showed the jury, however, that when the complainant's testimony was examined using the legal understanding of the term penetration—the understanding the jury received in its charge—she did testified that appellant digitally

penetrated her.[2] We conclude the State's case against appellant was very strong.

The *Van Arsdall* factors are not exclusive. *Davis*, 203 S.W.3d at 852. We have considered two other factors concerning the context of the trial to assist us in determining the effect the complainant's impeachment would have had on the jury. The first relates to conflicting evidence that could impact the complainant's credibility. Velez testified that she asked the complainant whether she had voluntarily ingested alcohol over the last twenty-four hours and the complainant replied that she had not. But jurors had already heard the complainant herself testify that she drank beer that day. As a result, before any impeachment testimony concerning her criminal record would have been offered, jurors may have already

---

[2] This exchange occurred during the complainant's testimony:

> Q. So was he able to penetrate your vagina with his penis?
>
> A. No. But he tried to arouse me by taking his fingers and licking them and like trying to rub my clitoris.
>
> Q. Let's talk about that. The outer folds of your vagina, did his finger actually penetrate there and touch your clitoris?
>
> A. Yes.

And although the complainant had answered "no" to Velez's initial question about penetration, she reported the same conduct by appellant to Velez, saying that appellant "touched my clitoris."

The jury was instructed:

> "Female Sexual Organ" means and includes the vulva or tissue immediately surrounding the vagina, the vagina, the female genitalia or any parts between the labia of the female genitalia.
>
> You are further instructed that penetration is complete, however slight.

questioned whether the complainant was being completely truthful in her reporting of facts to the nurse.

Finally, although we rejected the argument that error was not preserved in this case, we must acknowledge that the State indirectly identified a significant issue in our harm analysis. We do not know the specifics of the complainant's criminal history aside from the fact that she was on deferred adjudication probation "for some felony offenses." Without identification of those offenses, and any other aspects of the complainant's history that would be offered, we cannot realistically predict how the impeachment evidence would affect jurors' evaluation of the complainant's testimony concerning the aggravated sexual assault.

When we consider all of these factors, we conclude that—even if the trial court's refusal to allow appellant to cross-examine the complainant concerning her criminal history violated his right to confrontation—there is no reasonable possibility that the court's error "moved the jury from a state of non-persuasion to one of persuasion" concerning appellant's guilt. *See Davis*, 203 S.W.3d at 852–53. Instead, we conclude on the record before us, beyond a reasonable doubt, that the error could not have contributed to appellant's conviction. *See* TEX. R. APP. P. 44.2(a). We overrule appellant's single issue.

## Conclusion

We affirm the trial court's judgment.

210980f.u05

Do Not Publish
Tᴇx. R. Aᴘᴘ. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

FREDDIE GOINES BEVERLY, Appellant

No. 05-21-00980-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 422nd Judicial District Court, Kaufman County, Texas

Trial Court Cause No. 19-90211-422-F.

Opinion delivered by Justice Pedersen, III. Justices Myers and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 6th day of December, 2022.